594 F.2d 1220
 Gary N. GARLAND and Stephen A. Kenyon, Appellants,
v.
James POLLEY, Peter Oswald, Jerry Manternach, Larry
Brimeyer, Lawrence LaBarge, Calvin D. Auger and
John Sissel, Appellees.
 No. 78-1666.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 12, 1979.
Decided March 27, 1979.
 
 Philip B. Mears, Iowa City, Iowa, argued and on brief, for appellants.
 George Cosson, Asst. Atty. Gen., Des Moines, Iowa, argued for appellees; Richard C. Turner, Atty. Gen., Stephen C. Robinson, Sp. Asst. Atty. Gen., and Curtis A. Yocom, Jr., Asst. Atty. Gen., Des Moines, Iowa, on brief.
 Before ROSS and McMILLIAN, Circuit Judges, and VAN SICKLE, District Judge.*
 ROSS, Circuit Judge.
 
 
 1
 In this action two prisoners claim violations of their civil rights by prison officials. The first issue requires an examination of the officials' action in shutting down the plaintiffs' leather goods business which they operated inside the penal institution. As a second matter we must assess plaintiff Garland's claim that he was transferred to a maximum security prison in retaliation for exercising his right to file a lawsuit over the shutdown of the leather goods business. Garland alleged that after the transfer he was assaulted by several other inmates at the maximum security institution.
 
 
 2
 The district court dismissed the plaintiffs' complaint about closing the business on a summary judgment motion. The court also dismissed Garland's individual claim, which was that his first amendment right of access to the courts had been infringed by the retaliatory transfer. The court did so on the basis that a prisoner in this instance had no right to a "transfer hearing" and an impartial tribunal within the prison.
 
 
 3
 We affirm on plaintiffs' claim concerning the operation of the leather goods business, but find that as to the second point the district court was in error.
 
 
 4
 Plaintiffs raise several constitutional challenges to the shutdown of their apparently thriving business.
 
 
 5
 Plaintiffs complain that their procedural due process rights were violated when the leather goods business was terminated without notice, reasons, or a hearing. To establish the right to due process procedures, an interest in liberty or property, as constitutionally defined, must be at stake. Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "When protected interests are implicated, the right to some kind of prior hearing is paramount." Id. at 569-70, 92 S.Ct. at 2705.
 
 
 6
 Moreover, though a prisoner's due process rights may be restricted, they are not repealed:
 
 
 7
 Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).
 
 
 8
 Of course, as we have indicated, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.
 
 
 9
 Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974-5, 41 L.Ed.2d 935 (1974).
 
 
 10
 Thus it is clear that while "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system * * * .", it is also true "that the convicted felon does not forfeit All constitutional protections by reason of his conviction and confinement in prison. He retains a variety of important rights that the courts must be alert to protect." Meachum v. Fano, 427 U.S. 215, 224, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1975) (emphasis added).
 
 
 11
 In this case, plaintiffs do not contend that the Constitution itself has established a liberty or property interest which encompasses a right to operate a business inside a prison institution. Rather, plaintiffs contend that the State's rules, regulations, and encouragement of "hobby crafts" have Created a constitutionally protected interest, much like the state-law created "liberty" interest in Wolff v. McDonnell, supra, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935, which the Supreme Court concluded was entitled to due process protections.[1]
 
 
 12
 We find it unnecessary to decide which, if either, interest in liberty or property the state might have created. For even assuming that the state could create a protected interest in operating an ongoing business inside a prison institution, plaintiffs have offered us no indication that the state has done so here. Plaintiffs allege, and we must accept as established,[2] that prisoners are encouraged to produce "hobby crafts," and that they are allowed to market their hobby craft products outside the institution, "and to a limited extent, inside the institution." Moreover, it is alleged that residents "have been allowed to market their products under trade names," and "are allowed limited access to the proceeds of such marketing."
 
 
 13
 Plaintiffs also allege, however, a different situation for themselves. Garland and Kenyon combined their hobby craft efforts "and formed a business entitled 'G and K Leather Goods.' " They invested a "sizable amount of time and money," in the business which provided them with "numerous business advantages." Finally, G and K Leather Goods "applied for and received an 'Employer Identification Number' from the Internal Revenue Service, and a Retail Sales Permit from the State of Iowa." "Numerous orders were received and the business prospered."
 
 
 14
 On the face of it, it is clear that plaintiffs' vigorous entrepreneurship exceeded the institution's encouragement of Hobby crafts, or its acquiescence in a sale of Hobby crafts. Plaintiffs have cited no policy, rule, or regulation from which we could justifiably conclude that the state has gone further and has in fact created an expectation that prisoners may operate a joint Business commensurate with that of the plaintiffs.
 
 
 15
 Accordingly, we find no fact issue as to the creation of a protected interest, and therefore no right to procedural protection for the business.
 
 
 16
 We reject as well the plaintiffs' additional constitutional contention that the business shutdown violated their first amendment right to associate for business purposes. Plaintiffs have cited no authority from which we could conclude that prison officials violate a prisoner's first amendment associational rights by refusing to allow him to join with others in the operation of a business while incarcerated.[3]
 
 
 17
 However, we disagree with the district court that Garland's claim that he was transferred to another prison in retaliation for filing a civil rights action "fails to state a violation of a constitutionally protected right." We quote the same passage from Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) relied upon by the district court, but provide the following emphasis:
 
 
 18
 As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and Is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive.
 
 
 19
 Id. at 242, 96 S.Ct. at 2547 (emphasis added).
 
 
 20
 In Montanye, supra, one of the plaintiff's allegations had been that his transfer violated his first amendment rights because it was done for the purpose of restricting his access to the courts. Id. at 238; 244 (dissent) 96 S.Ct. 2543. (dissent)
 
 
 21
 On remand the court of appeals acknowledged the Supreme Court's holding that the Due Process Clause in and of itself did not require an institutional hearing in connection with a prisoner's transfer. Haymes v. Montanye, 547 F.2d 188 (2d Cir. 1976), Cert. denied, 431 U.S. 967, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1977). The court of appeals then went on to address the issue which it had Not addressed previously, and to which the dissenters in the Supreme Court had alluded. That issue was whether or not Haymes' transfer violated his first amendment rights. Id. at 190. The court of appeals concluded that the district court's use of summary judgment on this issue was inappropriate, and remanded for a trial on the prisoner's claim that his transfer was in reprisal for exercising his first amendment rights. Id. See also Laaman v. Perrin, 435 F.Supp. 319, 326-28 (D.N.H.1977).
 
 
 22
 We conclude that there was a genuine issue as to whether Garland's transfer violated the Constitution, inasmuch as it has been alleged that the Reason for the transfer was his exercise of constitutional rights. The defendants (prison officials) are not entitled to summary judgment, having offered nothing in refutation of the plaintiff's complaint.
 
 
 23
 Accordingly, the case is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable BRUCE M. VAN SICKLE, United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 In Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court found that the State of Nebraska had created by statute the right of a prisoner to accumulate "good-time" and thereby to shorten his prison sentence, and that the deprivation of this state-created liberty interest for major misconduct was entitled to due process protections
 
 
 [2]
 Because plaintiffs were defending against a summary judgment motion, we view the allegations most favorably to them. Moreover, the state introduced nothing in refutation of plaintiffs' pleadings
 
 
 [3]
 The only Supreme Court authority cited to us is Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), which examined the issue of the first amendment and prisoner mail. There the Court cited as a model a Federal Bureau of Prisons policy statement. That policy statement, although itself not in issue, provided in pertinent part:
 (1) Any material which might violate postal regulations, I. e., threats, blackmail, contraband or which indicate plots of escape.
 (2) Discussions of criminal activities.
 (3) No inmate may be permitted to direct his business while he is in confinement. This does not go to the point of prohibiting correspondence necessary to enable the inmate to protect the property and funds that were legitimately his at the time he was committed to the institution. Thus, an inmate could correspond about refinancing a mortgage on his home or sign insurance papers, but He could not operate a mortgage or insurance business while in the institution.
 Id. at 414 n. 14, 94 S.Ct. at 1812 n. 14 (emphasis added).