Chester PATTERSON,
Plaintiff-Appellant,

v.

Barry MINTZES, et al.,
Defendants-Appellees.

No. 81–1364.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1982.
Decided Sept. 7, 1983.

Chester Patterson, pro se.

James Robinson, David M. Honigman (argued), Detroit, Mich., for plaintiff-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Lansing, Mich., Robert A. Derengoski, Sol. Gen., J. Peter Lark, Asst. Atty. Gen. (argued), Corrections Div. Crim. Appeals Section, Lansing, Mich., for defendants-appellees.

Before KRUPANSKY and WELLFORD, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This *pro se* § 1983 action was initiated by Chester Patterson (Patterson) against defendants Barry Mintzes (Mintzes), William Grant (Grant) and Mark Smith (Smith), respectively the Warden, Deputy Warden and Prison Counselor of the State Prison of Southern Michigan (SPSM), for declaratory and compensatory redress to recompense averred deprivations of plaintiff's First Amendment right of access to the courts and Eighth Amendment guarantee against cruel and unusual punishment. Patterson appealed from the April 30, 1981 judgment of the United States District Court for the Eastern District of Michigan granting the motion of defendants for summary judgment.

■ It is initially incumbent upon this Court to ascertain whether Patterson has waived the right to appeal from the judgment of the district court for failure to timely file written objections to the magistrate's report and recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Patterson's cause of action was referred to a magistrate under 28 U.S.C. § 636(b)(1)(B). 28 U.S.C. § 636(c) dictates that Patterson had 10 days within which to file written objections, if any, to the magistrate's report and recommendations. The record concedes, however, that Patterson's written objections were tendered to the dis-

trict court on the 12th day following Patterson's receipt of the magistrate's report. Nevertheless, the district court filed the written objections, without requiring Patterson to move for an extension of time within which to file and/or demonstrate excusable neglect, and pronounced in its judgment that such untimely written exceptions had been considered together with the magistrate's report and recommendation.[1] From this judgment Patterson filed a timely notice of appeal.

In *Walters, supra,* this Court promulgated the following rule of waiver applicable when a party fails to file written objections as authorized by 28 U.S.C. § 636(b)(1):

> [T]he fundamental congressional policy underlying the Magistrate's Act—to improve access to the federal courts and aid the efficient administration of justice—is best served by our holding that a party shall file objections with the district court or else waive right to appeal. Additionally, through the exercise of our supervisory powers, we hold that a party shall be informed by the magistrate that objections must be filed within ten days or further appeal is waived.
>
> The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately. This comports with judicial efficiency and "will often save the parties the expense and difficulty of appeal."

638 F.2d at 949–50. This Court concludes that when written objections to a magistrate's report are tendered beyond the 10 day period of 28 U.S.C. § 636(b)(1), but are nevertheless filed and considered by the district court, the criteria identified in *Walters* in justification of the waiver rule promulgated therein dissipate and the rule will not apply to bar appellate review.

■ It is initially observed that the 10 day period of § 636(b)(1) may be extended

---

1. Mintzes did not challenge the district court's filing of Patterson's untimely written objections although several procedural vehicles were available to do so, *e.g.,* motion to strike the objections from the record, motion for an extension of time to file counter written objection, or motion for reconsideration. Nor has Mintzes on appeal assigned as error the district court's filing and consideration of Patterson's untimely tendered objections.

by the district court. Section 636(b)(1) expressly dictates that the filing of written objections may be regulated by "rules of court";

Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations *as provided by rules of court.* (emphasis added).

"Rules of court" incorporate, at a minimum, the Federal Rules of Civil Procedure. In particular, Rule 6(b) provides for enlargement of time periods "[w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time ..."[2] In the action *sub judice,* the magistrate ordered Patterson to file written objections within 10 days; this is an "order of court" within the meaning of Rule 6(b) and therefore subject to extension.

■ Further, recognition of a district court's authority to extend the time to file written objections ultimately advances and serves the underlying purpose of the Magistrate Act. The district court, rather·than the magistrate, is charged with the ultimate responsibility of properly adjudicating the Article III controversy before it. *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). Accordingly, the district court may place upon the magistrate's recommendation such reliance as is warranted through the "exercise of sound judicial discretion." *Id.,* 100 S.Ct. at 2413. A district court's power to extend the 10 day filing period correspondingly preserves the opportunity to render a more fully informed opinion and thereby effectively discharge its judicial responsibilities. An analysis of the interests underlying the Magistrate Act and the desirable procedures of achieving those interests compel the conclusion that Congress did not intend to divest the district courts of the ability to balance the interests of the parties and the interests of justice and extend the 10 day period of § 636(b)(1) when necessary and appropriate[3] to accomplish the ultimate objects of the proceedings, to wit, ascertain the facts and the controlling principles of law. Last, it is observed that Congress did not promulgate the time prescription of § 636(b)(1) to effectuate or advance an expeditious resolution of the proceedings. Time is not, in the traditional sense, "of the essence". Therefore no policy reasons exist in support of the proposition that a district court should not be authorized to extend the 10 day period to file objections.[4]

The waiver rule of *Walters* is predicated upon advancement of "[t]he fundamental congressional policy underlying the Magistrate's Act—to improve access to the federal courts and aid the efficient administra-

---

2. Rule 6(b) provides in pertinent part:
   (b) *Enlargement.* When by these rules or by a notice given thereunder or *by order of court* an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; * * *
   The Notes of Advisory Committee on Rules evidence the liberal interpretation to be afforded Rule 6(b):
   Certainly the rule is susceptible of the interpretation that the court is given the power in its discretion to relieve a party from failure to act within the times specified in any of these other rules, with only the exception stated in Rule 6(b) ...

3. Rule 6(b), Fed.Civ.P.

4. The Amendments to the Rules of Civil Procedure announced by the Supreme Court on April 28, 1983, effective August 1, 1983, provide for an extension of the 10 day period. *See:* 51 U.S.L.W. 4510 (May 31, 1983). Newly promulgated Rules 72–76 pertain to magistrates and closely parallel the Magistrate Act as it appears in Title 28. Rule 72(b) states that "within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." The 10 day period of Rule 72(b) may be enlarged by amended Rule 6(b), which expressly provides for enlargement of periods except as included in certain enumerated rules, of which Rule 72(b) is not one. These amended Rules, however, do not apply retrospectively and therefor are inapplicable to the instant case.

tion of justice". *Walters, supra,* 638 F.2d at 949. These policies are advanced when a district court reviews the written objections to the magistrate's report and recommendation. In the case at bar the district court, consistent with congressional policies underlying the Magistrate Act, extended the 10 day period of § 636(b)(1), by accepting Patterson's written objections for consideration. The express dictates of *Walters*—that "a party shall file objections"—have been satisfied, albeit with implicit leave of court rather than of right. Under these circumstances the waiver rule of *Walters* is inapplicable.

Confronting the merits of the instant appeal, it is observed that the complaint, and the attached "Client Grievance Forms", reflect the following operative facts relative to Patterson's First Amendment claim. Patterson was incarcerated at the Marquette Branch Prison, State of Michigan, and transferred from said facility on December 11, 1980, to SPSM. The sole purpose of the transfer was to provide Patterson the opportunity to appear on his own behalf at a scheduled judicial proceeding on January 13, 1981. Plaintiff's personal property, including transcripts and legal papers necessary for his court appearance, were transferred on the same bus in which he was transported to SPSM. These documents and records were placed in the property room at SPSM upon arrival.

Upon arrival at SPSM on December 11, 1980 Patterson was placed in 5-west segregation, cell 16-base. Continuous oral requests by Patterson for access to his transcripts, legal papers and writing amenities were denied. On the fourth day subsequent to his arrival, December 15, 1980, Patterson filed a "Client Grievance Form" seeking his legal documents and writing supplies. The request was denied by defendants. Patterson's transcript and legal papers were not delivered to him until January 27, 1981, two weeks subsequent to his judicial proceeding which had concluded on January 13, 1981. ▋ It is beyond peradventure that the factual allegations heretofore enumerated, which stand unrebutted by credible testimo-

ny or documentary evidence, constitute a cognizable § 1983 action predicated upon the First Amendment. It is well-settled that prisoners possess a constitutional right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). As has been recently summarized:

> "[P]ersons in prison, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes 'access of prisoners to the courts for the purpose of presenting their complaints.'" *Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263, (1972), quoting, *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969).

*Milhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir.1981). Prison officials are charged with the responsibility of assuring that inmate access to the courts is "adequate, effective and meaningful". *Bounds, supra* 97 S.Ct. at 1495. *See also, Burns v. Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); *Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). A prisoner's First Amendment guarantees must be freely exercisable without hinderance. *Milhouse, supra,* 652 F.2d at 374, referencing *Ferranti v. Moran,* 618 F.2d 888, 891–92 (1st Cir.1980); *Garland v. Polley,* 594 F.2d 1220, 1222–23 (8th Cir.1979); *Hudspeth v. Figgins,* 584 F.2d 1345, 1347 (4th Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979).

Specifically, the Supreme Court has adjudged that "adequate and effective appellate review" is impossible without a trial transcript or adequate substitute and that the state must provide trial records to inmates unable to purchase them. *Griffin v. Illinois,* 351 U.S. 12, 20, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956). As an inescapable corollary to *Griffin,* an inmate may not be unjustifiably denied access to an existing transcript which is necessary for effective judicial review. "Meaningful" access requires writing facilities and supplies as well as legal resources:

> Moreover, our decisions have consistently required States to shoulder affirmative

obligations to assure all prisoners meaningful access to the courts. It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them.

*Bounds, supra,* 97 S.Ct. at 1496.

■ It has been recognized that exercise of First Amendment rights may be restricted when outweighed by penological objectives or legitimate goals or policies of the correctional institution. *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). *Accord: Storseth v. Spellman, et al.,* 654 F.2d 1349, 1355 (D.C.Cir.1981). However, the limitation must be no greater than is necessary to protect the particular governmental interest involved. *Id.* In the case at bar *no* governmental interest has been advanced for justification for denying Patterson access to his transcripts, legal papers and writing materials.

The District of Columbia Circuit has recently addressed allegations almost identical to those presented herein and has adjudged the allegations to advance a viable First Amendment cause of action. *Crisafi v. Holland,* 655 F.2d 1305, 1309–10 (D.C.Cir. 1981). Patterson charges that he was transferred to SPSM for the sole purpose of attending a judicial proceeding addressing certain asserted grievances and was denied access to existing transcripts and legal papers necessary for a proper presentation of his cause even though the materials were easily accessible within the institution and even though he filed written requests expressly and clearly identifying his critical dependence upon having access to the documents. Assuming the truth of the foregoing, it is evident that defendants were not entitled to judgment as a matter of law and a summary judgment disposition of this claim was clearly improper.

■ Patterson also predicates an abrogation of his Eighth Amendment right to be free of cruel and unusual punishment upon, *inter alia,* defendants' denial, without penological justification, of out-of-cell exercise during his 46-day tenure at SPSM. A genuine issue of material fact exists as to whether Patterson was permitted exercise on or after December 20, 1980. Accordingly, summary judgment disposition of this claim was improper. It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health. *Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir.1982), citing *Campbell v. Cauthron,* 623 F.2d 503, 506–07 (8th Cir.1980); *Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir.1979). *See also: Montana v. Commissioners Court,* 659 F.2d 19, 22 (5th Cir.1981), *cert. denied,* 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 (1982); *Franklin v. State of Oregon, State Welfare Division,* 662 F.2d 1337, 1346 (9th Cir.1981); *Kirby v. Blackledge,* 530 F.2d 583, 587 (4th Cir.1976). Also, adjudication of the Eighth Amendment claim may necessitate development of additional facts not incorporated into the record, such as the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for denial of the right to exercise, physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise. *See: Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir.1982). A summary judgment disposition of Patterson's Eighth Amendment claim was clearly improper.

The judgment of the district court is RE-VERSED and this action is REMANDED for further proceedings consistent with this opinion.

WELLFORD, Circuit Judge, dissenting.

I respectfully dissent because I feel that appellant has waived his right to appeal from the determination of the magistrate in this cause under 28 U.S.C. § 636(b)(1) as interpreted by this court in *United States v. Walters,* 638 F.2d 947, 950 (6th Cir.1981). The majority cites the language of that case, which holds "that a party shall be informed by the magistrate that objections *must* be filed within ten days or *further*

*appeal is waived."* 638 F.2d at 950 (emphasis added).

This court added:

The purpose of the Magistrate's Act is to relieve courts of unnecessary work. Since magistrates are not Article III judges, it is necessary to provide for a redetermination by the court, *if requested,* of matters falling within subsection (b)(1)(B).

638 F.2d at 950 (emphasis added).

There is no dispute but that the magistrate informed Patterson that his objections had to be filed within ten days as specified. Patterson, within that period of time, requested no extension from the magistrate or from the district court; nor did he request a redetermination by filing objections to the magistrate's ruling that judgment be rendered for appellee on its motion. He therefore waived any further appeal from this decision.

Rule 6(b), Federal Rules of Civil Procedure, cited by the majority, gives a district court undoubted discretion to enlarge the time in which an act is required to be done "for cause shown . . . *if* request therefore is made *before the expiration* of the time originally prescribed." (Emphasis added.) No such showing was found to have been made on the part of appellant by the district judge in this case, nor did the district judge determine under that Rule that appellant had demonstrated "excusable neglect."

Under these circumstances, neither the district court nor this court can properly address the merits of appellant's claim.