952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry Lee MABRY, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee,
 No. 90-5270.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1992.
 
 Before MERRITT, Chief Judge, RALPH B. GUY, Jr., Circuit Judge, and WELLFORD, Senior Circuit Judge.
 MERRITT, Chief Judge.
 
 
 1
 Terry Lee Mabry appeals the District Court's denial of his Motion to Vacate, Amend, or Correct Sentence, pursuant to 28 U.S.C. § 2255. Defendant challenges an application of the Sentencing Guidelines under which the base offense level for his firearms conviction was replaced by a higher base offense level for an uncharged offense of cultivating marijuana. United States Sentencing Guidelines, Guidelines Manual, § 2K2.1(c)(1) (1988). For the reasons set out below, we vacate defendant's sentence and remand to the District Court for a further evidentiary hearing and reconsideration.
 
 BACKGROUND
 
 2
 The defendant, Terry Lee Mabry, rented a farmhouse that he had begun to "fix up" in the Hammonds Fork section of Knox County, Kentucky. On August 1, 1988, Kentucky State Police went to that area to investigate complaints of shots being fired at cars turning around at the dead end of a road near Mabry's house. Mabry gave the police permission to "look around." The police conducted a complete search of the farmhouse and surrounding land. During their search of the farmhouse they seized six firearms--a .22 caliber rifle, four 12 gauge shot-guns, and a .45 caliber pistol. In addition to the firearms, the police also discovered marijuana plants. Specifically, they found 142 marijuana plants growing in a field about one-half to three-quarters of a mile from defendant's residence; fifteen marijuana plants drying in a barn behind the farmhouse; twelve marijuana plants at the edge of an old, grown-over field approximately 250 yards from the house; and three potted marijuana plants in plastic gallon milk jugs thirty-five to forty yards from the house in an abandoned garden. Mabry claimed that he had returned to the property the day of the search, after having spent two weeks in Cincinnati.
 
 
 3
 State officials charged defendant with cultivating marijuana, with possession of a handgun by a felon, and for being a persistent felony offender. A federal indictment issued on October 18, 1988, charging defendant with three counts of federal firearms violations. Count One charged Mabry with receipt of a firearm by a convicted felon in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). Count Two charged him with using an alias in the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6). Count Three charged Mabry, a convicted felon, with knowingly possessing five firearms, in violation of 18 U.S.C. § 922(g)(1). Defendant was not indicted in federal court for the cultivation of marijuana. The Commonwealth of Kentucky subsequently dropped its drug charges against defendant, though at the time of defendant's sentencing hearing in the District Court, the state drug charges were still pending.
 
 
 4
 Pursuant to a plea agreement, Mabry pled guilty to Count Two of the federal indictment. Counts One and Three were dismissed on motion of the United States. On June 5, 1989, the District Court sentenced defendant under the 1988 Sentencing Guidelines. The Court arrived at an offense level of 16, which with Mabry's Criminal History Category of VI, placed him in a guideline range of 46-57 months. Sentencing Table, Chapter 5, Part A. The Court sentenced defendant to fifty-six months, to be followed by a three years supervised released.
 
 
 5
 The Court computed defendant's base offense level by applying U.S.S.G. § 2K2.1(c)(1). The 1988 version of that section stated that "[i]f the defendant used the firearm in committing or attempting another offense, apply the guideline in respect to such other offense ... if the resulting offense level is higher than that determined above." The Court looked to the base offense level for the offense of possessing or cultivating 172 marijuana plants and found that it was 16. Because the base offense level for Mabry's firearms conviction was 9, the Court swapped that base offense level with the higher base offense level of 16 for the uncharged drug offense. Next, the Court enhanced the base offense level of 16 by two points to account for defendant's original firearm conviction. The Court then subtracted two points for defendant's acceptance of responsibility to arrive at an offense level of 16.
 
 
 6
 Defendant filed an action under 28 U.S.C. § 2255 challenging his sentence. He attacks the swapping of the two base offense levels as violative of Due Process on these facts.[1]
 
 DISCUSSION
 
 7
 In order to swap a lower base offense level for a firearm conviction with a higher base offense level attaching to another offense, the Guidelines require that the firearm be "used ... in committing or attempting" that other offense to which the higher base offense level attaches. U.S.S.G. 2K2.1(c)(1) (1988). To apply § 2k2.1(c)(1) to the case at bar, two connections must be made. First, Mabry must be linked to the marijuana plants. Second, his use of the firearm must be linked to his participation in the marijuana cultivation. We hold that the record fails to establish sufficient evidence that Mabry "used" the firearm for which he was convicted to "commit" or "attempt" the uncharged offense of cultivating marijuana.
 
 
 8
 The Presentence Investigation upon which the District Court relied in sentencing Mabry links Mabry to the marijuana by virtue of the fact that the plants were found in varying proximities to Mabry's residence. Mabry was never tried on the marijuana charges. Indeed, the Commonwealth eventually dropped its drug charges against Mabry. Moreover, Mabry has consistently denied cultivating, possessing, or having any connection to the marijuana plants found on the property to which he had recently moved. Mabry argued below that he merely rented the house on the property, that thirteen other individuals owned the house, the barn and the surrounding land, that he had not entered the barn behind the house in which three plants were found, that he had been absent from the house and the property for two weeks immediately prior to his arrest, and that no marijuana plants were found in the house in which he lived and kept the firearms. In short, Mabry disputes the facts found in the presentencing report.
 
 
 9
 While we recognize that narcotics and firearms are often found in combination, defendant's dispute of the presentencing report warrants an evidentiary hearing on the issue of his connection to the marijuana plants. There is no record of such a hearing. Consequently, we are unable to find proof linking Mabry to the marijuana, much less proof connecting Mabry's use of the guns to the cultivation of marijuana. In light of defendant's denials of the drug offense and the absence of fact finding on this crucial issue, we cannot uphold the application of § 2K2.1(c)(1) on these facts.
 
 
 10
 Accordingly, we VACATE defendant's sentence, and REMAND to the District Court for further evidentiary hearings on the applicability of § 2K2.1(c)(1) (1988) to this case. In light of this disposition, we do not reach defendant's other objections to his sentence raised on appeal.
 
 
 11
 WELLFORD, Senior Circuit Judge, dissenting.
 
 
 12
 Petitioner, Terry Lee Mabry, pleaded guilty to one of three counts of an indictment and was charged with making false statements in the acquisition of firearm in violation of 18 U.S.C. § 922(a)(6). Mabry had been previously convicted of numerous crimes including three separate drug offenses. As found by the magistrate judge:
 
 
 13
 [T]he defendant used an alias at the time he purchased a rifle from a federally licensed firearms dealer. On August 1, 1988, Kentucky State Police officers seized six firearms from the defendant during the course of a shooting investigation. He was also charged with cultivating 160 marijuana plants, persistent felony offender and possession of a handgun by a convicted felon on the latter date. The firearms offenses were made the subject of the indictment in this case while the other charges remained on the state court level.
 
 
 14
 J/A 32.
 
 
 15
 The magistrate judge also found that Mabry was fully advised of his rights at the time the district judge sentenced him, and that he failed to appeal from the sentence. He concluded that Mabry's failure to challenge the propriety of the sentence on direct appeal bars reconsideration of the now contested length of his sentence absent a showing of "cause and prejudice," citing United States v. Frady, 456 U.S. 152 (1982); Williams v. United States, 805 F.2d 1301 (7th Cir.1986). The magistrate judge then concluded that Mabry made no showing of good cause for the failure to take a direct appeal, but he proceeded, nevertheless, to review Mabry's contentions on the merits, finding that Mabry had established no grounds for relief in any event.
 
 
 16
 District Judge Siler adopted the proposed findings of fact and recommended conclusions "in full," including the conclusion that Mabry had waived any right to complain about his sentence except to show "cause and prejudice." The court also denied the motion to vacate.
 
 
 17
 I cannot determine from the record whether Mabry, in fact, filed objections in a timely fashion.[1] The Supreme Court interpreted this circuit's filing rule for objections to be nonjurisdictional and, therefore, subject to waiver. Thomas v. Arn, 474 U.S. 140, 146 (1985); Patterson v. Mintzes, 717 F.2d 284, 286 (6th Cir.198); United States v. Walters, 638 F.2d 947 (6th Cir.1981). I dissented, however, from the case that the Court relied upon in making its interpretation, and, in my view, this circuit's filing requirement is, indeed, jurisdictional under Walters. See Patterson, 717 F.2d at 289-90 (Wellford, J., dissenting); Walters, 638 F.2d at 950. In any event, I would affirm the district court in each of its findings, so I dissent from the majority opinion.
 
 
 18
 A. WAIVER ABSENT "CAUSE OR PREJUDICE"
 
 
 19
 Frady makes it clear that the standards applied to a direct appeal do not apply to a collateral attack from a criminal conviction (or sentence). "[A] collateral challenge may not do service for an appeal." Frady, 456 U.S. at 165. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." Id. at 166. "[T]he proper standard for review ... is the 'cause and actual prejudice' standard enunciated in Davis v. United States, 411 U.S. 233 (1973), and later confirmed and extended in Francis v. Henderson, 425 U.S. 536 (1976), and Wainwright v. Sykes, 433 U.S. 72 (1977)." Id. at 167.
 
 
 20
 In my view, Frady establishes that Mabry must show "not merely that the errors at his [sentencing] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage...." Id. at 170 (emphasis in original). I would find no error in the conclusion of the magistrate judge, approved and adopted by the district judge, that Mabry failed in this collateral attack.
 
 
 21
 Mabry states in his response (objection) to the findings and recommendation that the "proper base offense level" should be 16 not 18. His real objection throughout was to the "double counting" of the firearm use charge, not to the enhancement of the base offense by reason of unconvicted but allegedly "committed" marijuana offenses. He concedes that "limited case law may support enhancing a base offense level for other alleged criminal acts which do not lead to conviction." J/A 48. He objects to "the added two (2) point enhancement for using a gun in the commission of another offense when the original charge was a firearms violation." Thus, if the objections were timely made they are, in essence, objections to the two point enhancement of the base offense level under the guidelines. As indicated in the presentence report, however, the "guidelines imprisonment range based upon a total offense level of 16 and a criminal history category of VI," is 46-57 months. The sentence imposed by the district court was within that range. There was no concurrent objection by Mabry's counsel.
 
 
 22
 In regard to the magistrate judge's finding that Mabry waived his appeal, therefore, I find that Mabry has not established, as a matter of law, the requisites of the "cause and prejudice" standards of Frady and Sykes. If there were any errors at sentencing, in light of the information available to the sentencing judge and the position taken by Mabry's counsel, such error has not been demonstrated to have caused actual and substantial prejudice to him.
 
 B. NONMERITORIOUS OBJECTIONS
 
 23
 The presentence report notes hearsay information that vehicles had been fired upon in an area known as Hammons Fork of Knox County and recites further:
 
 
 24
 On August 1, 1988, three Kentucky State Police Officers went to that area of Knox County to investigate. At approximately 8:31 p.m., two officers arrived at that location, in a confidential state police vehicle, wearing partially plain clothes. The third Kentucky State Police Officer stayed a distance behind and was driving a marked Kentucky State Police cruiser. After the two state police officers arrived at the location, a subject, later identified as Terry Mabry, approached the drivers side of the vehicle, at which time, the officers identified themselves as Kentucky state Police personnel. They advised Mr. Mabry, who at that time was stating he was William E. Reeves, that they were there on a complaint of someone at that residence shooting at people turning in the driveway. Mr. Mabry advised that he had shot at no one and that he was there remodeling the dwelling. One of the officers asked Mr. Mabry for permission to look around, and Mr. Mabry gave him permission. The third state police officer had arrived at the scene and an officer advised Mr. Mabry that he was not under arrest, but was being placed in the rear seat of the marked state police cruiser for detainment until they could determine if he was wanted.
 
 
 25
 Two Kentucky State Police Officers began searching the area and located three potted marijuana plants in plastic gallon milk jugs, located approximately 35 to 40 yards from the dwelling in a grown up garden area. One of the officers entered a wooden structure located behind the dwelling and observed 15 drying marijuana plants. Mr. Mabry was advised of his miranda warnings at approximately 9:20 p.m. The other state police officer began searching the barn area and one officer entered the dwelling house and observed an alarmed chain lock on the front door, which was standing open. The officer found a loaded Ruger .22 caliber rifle on the couch by the front door. Also in the house was a kerosene heater, several articles of camouflage clothing, canteen, and what appeared to be a disassembled motorcycle engine, in the living room area. There was no electricity in the house.
 
 
 26
 In the bedroom, the officer found 4 shotguns leaning on the wall beside the bed. Several items of mail were also in the room and were addressed to Terry Mabry. One of the officers found a colt .45 caliber semi-automatic pistol under a pillow on the bed. The pistol was fully loaded with one found in the chamber.
 
 
 27
 Officers proceeded up an old road leading from the dwelling in search of cultivated marijuana, and one of the officers found a plot which contained 12 marijuana plants in the edge of an old grown up field. These were located approximately 200 to 250 yards from the house. There was an old road leading from the house and a path leading off this road that led to the plants.
 
 
 28
 Mabry, at the sentencing hearing, admitted that he was at the site where a large quantity of marijuana was located and that he "had a house there," and "was fixing the house up" where arrested. He did not deny that a number of guns were in that house, several fully loaded. What he told the court, except for denying involvement in the marijuana, was not inconsistent with the Kentucky State Police report set out in the presentence submission by the district court. A Kentucky grand jury evidently found probable cause to indict Mabry on the marijuana charges. The district judge had a sufficient basis to find that Mabry, who had a considerable drug background, was indeed involved in the marijuana operation and that the firearm or firearms were obviously being used in connection with that operation. He had the opportunity first-hand to assess Mabry's credibility.
 
 
 29
 I find no error, regardless of whether the objection to the magistrate judge's finding was deemed properly and timely filed, in the action of the district court in this sentence imposed under the guidelines. There is abundant authority in this circuit for the consideration by the district court of hearsay information submitted in the presentence report, and Mabry's attorney conceded this at the sentencing hearing.
 
 
 30
 The role of the presentence report was well stated in the recent opinion, United States v. Herrera-Figueroa, 918 F.2d 1430, 1435 (9th Cir.1990):
 
 
 31
 Although the presentence report is not binding on the district court, see Belgard, 894 F.2d at 1097, district judges rely heavily on its contents in determining a defendant's sentence. As we have noted in the past, the purpose of the probation recommendation is "to provide the trial judge with as much information as possible in order to enable the judge to make an informed decision." Id. Because the court cannot spend the time necessary to examine every detail of the presentence report, the court must rely on the conclusions of the probation officer: probation officers therefore "are virtually indispensable." Id. In this case, for example, despite defense counsel's argument that the defendant's letter to the court indicated acceptance of responsibility, and despite the government's indication that it did not have any strong objections to a finding of acceptance of responsibility, the court stuck with its decision not to "upset the finding by the probation officer."
 
 
 32
 It can be argued with some legitimacy that the district judge erred in relying as heavily as he apparently did on the presentence report, and that he had an obligation to make his own independent determination on the question of acceptance of responsibility. However, ultimately this argument simply elevated form over substance. From a practical standpoint, district judges must give considerable weight to presentence reports; the system could not function efficiently otherwise. It is clear that the presentence interview currently plays, and will continue to play, a most substantial role in determining a defendant's sentence.
 
 
 33
 I also agree with the further admonition in United States v. Johnson, 935 F.2d 47, 50 (4th Cir.1991):
 
 
 34
 When a probation officer imparts information to a sentencing court as its neutral agent, the interests underlying the confrontation clause are not implicated. See United States v. Beaulieu, 893 F.2d 1177, 1180 (10th Cir.) (defendant "does not have an absolute right to confront witnesses whose information is made available to the [sentencing] court"), cert. denied, [110 S.Ct. 3302] (1990); United States v. Kikumura, 918 F.2d 1084, 1102-03 & n. 19 (3d Cir.1990) (court reluctant to impose confrontation clause jurisprudence upon sentencing process).
 
 
 35
 Guidelines sentencing has formalized the sentencing process by requiring the sentencing judge to make specific findings of fact and articulate reasons for a particular sentence in open court. See U.S.S.G. § 6A1.3, comment. (Nov. 1990); see also United States v. Belgard, 894 F.2d 1092, 1099 (9th Cir.1990) (result of guidelines sentencing is that "defendants may have actually acquired more due process than they had before."). While courts are entitled to consider without limitation any "information concerning the background, character, and conduct of a person convicted of an offense," 18 U.S.C.A. § 3661 (West 1985), sentencing guidelines mandate that a sentence be based upon objective factors supported by reliable evidence. U.S.S.G. § 6A1.3, comment. These factors include, among others, aspects of a defendant's underlying offense conduct, role in the offense, criminal history, and acceptance of responsibility. See generally U.S.S.G. § 1B1.1. In conjunction with Federal Rule of Criminal Procedure 32(c)(3)(D), the guidelines further require that if a defendant alleges any factual inaccuracy in the presentence report, the court shall make factual findings regarding the disputed issue or determine that no factual finding is necessary because the contested information will not affect the sentence. See U.S.S.G. § 6A1.3, p.s.; see also United States v. Walker, 901 F.2d 21 (4th Cir.1990).
 
 
 36
 In this case the district court has made sufficient factual findings concerning the imposition of the sentence. Since the district court made a determination concerning involvement in the marijuana offense based on the evidence presented in the presentence report, even if such information was hearsay, and since the district court made adequate findings setting out the basis for the sentence, I would affirm the decision of the district court.
 
 
 
 [1]
 The parties' briefs also raise the issue of whether this court had jurisdiction to entertain defendant's action in light of defendant's alleged failure to file a timely objection to the Magistrate's recommendations in response to Mabry's motion to vacate sentence. Our review of the docket reveals error and confusion in the District Court Clerk's filing process. We find, and the Government at oral argument agreed, that defendant's objections were not untimely. Consequently, we reach the merits
 
 
 [1]
 Mabry has appealed here from a denial of his motion for reconsideration by the district judge based upon his contention that he had filed timely objections to the magistrate judge's report and recommendation. There is serious question concerning the timely filing of an objection in this case. This circuit's "waiver rule" that one waives objection to a magistrate judge's finding and recommendation, unless filed with the Clerk of this Court within ten days, has been approved and found constitutional by the Supreme Court in Thomas v. Arn, 474 U.S. 140 (1985). See also Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir.1986). The docket sheet of the district court reflected no filing of objection to the magistrate judge's findings of fact and recommendation dated December 13, 1989. Mabry furnished receipts for certified mail (PO68334941), dated December 28, 1989 (Thursday), from his place of confinement in London, Kentucky. One of the certified mailings was addressed to the district court, the other to "Michele Murphy" (an assistant United States Attorney handling the case was R. Michael Murphy at Lexington). The request for return receipt reflected that the certified mailings were sent by certified mail to the "United States District Clerk" at London, Kentucky, and indicates that on January 2, 1990, the certified mail was "refused and returned." A separate domestic return receipt indicates that apparently on January 2, 1990, the certified mail was received at Lexington by Mr. Murphy, who did not notify the court. The United States Attorney acknowledged receipt of Mabry's response to the magistrate judge's findings. There are two postmarks on the request for return receipt; one dated February 28, 1990, at Ashland, Kentucky; the other March 1, 1990, at London, Kentucky. The certified mail submitted by Mabry, which was received on January 2, 1990, should have been marked "filed," by the Clerk so that the district court could have determined whether or not the filing was timely accomplished. (This was 20 days after the magistrate judge's findings and recommendation had been filed.) There is in the record Mabry's "reply to magistrate's proposed findings of fact and recommendation" with a stamp indicating "ATF-Lex, 1-5-90." This document is apparently Mabry's "objections" to the magistrate judge's decision, which he declared to have mailed on December 28, 1989. To add further to the confusion, Mabry's declaration indicates he mailed on that date copies to R. Michael Murphy and "Honorable James F. Cook, U.S. Magistrate, c/o U.S. Federal Clerk at London."