NOT FOR PUBLICATION
File Name: 05a0508n.06
Filed: June 15, 2005

NO. 04-5421

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TONYA HARRIS, an Administratrix of
the Estate of decedent Torris Harris,

     Plaintiff-Appellant,

v.

CITY OF CHATTANOOGA; JUSTIN
MCCOMMON, MARTIN PENNY,
CHRIS SMITH, DAVID ALLEN,
MARK SMELTZER, City of
Chattanooga Police Officers, in their
Official and Individual Capacities;
CHARLES R. KINSEY, CHRISTOPHER
L. GAYNOR, Private Citizens in their
Capacity as Agents for the City of
Chattanooga and in their Individual
Capacities,

     Defendants-Appellees.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

BEFORE: SUHRHEINRICH, BATCHELDER, and GIBSON [*], Circuit Judges.

     **SUHRHEINRICH, J:** Plaintiff Tonya Harris, individually and as administratrix for the estate of Torris Harris, appeals from the order of the district court granting Defendants' motion to enforce a settlement agreement. We **AFFIRM.**

---

     [*]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

**I.**

This action arises out of the suffocation death of Torris Harris, Tonya Harris's son, after an altercation with five Chattanooga police officers, Justin McCommon, Martin Penny, Chris Smith, David Allen, Mark Smeltzer, and two private citizens, Charles Kinsey, and Christopher Gaynor. On December 26, 2001, Defendants initiated a traffic stop of Torris Harris. Harris exited the vehicle, and the officers chased him. After they caught him, all Defendants restrained him. Torris died following the struggle.

On December 26, 2002, Plaintiff filed a complaint against the City of Chattanooga, five City of Chattanooga police officers, and two private citizens, alleging violations of 42 U.S.C. §§ 1983, 1985. On November 14, 2003, Harris's former counsel, Robin Ruben Flores, made a written demand to the City of Chattanooga to settle the case for $100,000. On December 18, 2003, Flores sent by facsimile a letter to Phil Noblett. The letter is entitled "Acceptance of Offer to Settle" and states as follows:

> Thank you for your attention to this case. As we discussed yesterday, December 17, via telephone, my client has accepted your offer on behalf of your client, the City of Chattanooga, to settle this matter for a sum of twenty-eight thousand five hundred dollars ($28,500.00). I assume that your client will also pay all court costs. I further assume that this amount shall constitute a settlement of all claims associated with this matter, state and federal, present and future.

This letter was copied to Ms. Tonya Harris, Lee Davis, Esq., Johnny Houston, Esq., W. Jeffrey Hollingsworth, Esq., John T. Rice, Esq.

On December 18, 2004, Noblett sent the following letter to Flores:

> Pursuant to our telephone conversation yesterday afternoon, this letter will confirm that your client has agreed to settle her claims against the City of Chattanooga and all other parties regarding the death of Torris Harris in the amount of $28,500.00. It is my understanding that this settlement will resolve all outstanding claims that your client has filed in federal court and in state court concerning this

-2-

matter. Attached with this letter you will find, pursuant to our discussion, an Order of Dismissal for both lawsuits which will be filed in federal court and in Circuit Court and a Release of All Claims which I have prepared reflecting this settlement.

A copy of this letter was sent to attorneys Lee Davis, Johnny D. Houston, Jeffrey Hollingsworth, and John T. Rice. As noted in the letter, enclosed were a proposed "AGREED ORDER OF DISMISSAL" for the state action and a proposed "AGREED ORDER OF DISMISSAL" for the federal action. These proposed orders would dismiss both causes of action with prejudice as to all defendants. Also enclosed was a proposed "RELEASE OF ALL CLAIMS" releasing and forever discharging all claims against the defendants in consideration of the sum of $28,500.00.

Attorney Flores stipulated to the correctness of both letters. (JA. 204). In a letter dated December 22, 2003, postponing a hearing on a motion to compel filed by defendant Kinsey, Flores remarked to Attorney John Rice that "[a]s you are probably now aware, my client has accepted an offer to settle the cases in state and federal courts as to all defendants."

On January 1, 2004, Flores sent the following letter to Noblett:

My client has reversed her position on her acceptance of your client's offer to settle this matter for $28,500.00. She now rejects the offer and does not wish to sign the documents you forwarded to my office on December 18, 2003.

Instead, she makes a counter offer to settle for seventy-five thousand dollars ($75,000.00), plus the funeral costs and expense and medical bills we have submitted to you.

I am aware that you are free to file a motion to enforce the settlement Ms. Harris has accepted. However, she now claims that she believed that she was accepting an offer of one hundred thousand dollars.

On January 13, 2004, subsequent to the settlement rejection, Plaintiff filed documents entitled "Motion for Enlargement of Time to Disclose Expert Witnesses," and a "Motion for Enlargement of Time." In the first motion, Plaintiff stated that she "would show that the parties

-3-

reached a settlement agreement on or about December 17, 2003, and that Plaintiff's counsel, in anticipation of the settlement, halted all work not associated with finalizing the settlement. Plaintiff would further show that she rejected the settlement in early January."

After receiving notice of rejection of the settlement agreement, Defendants filed motions to enforce the contract of settlement. The matter was referred by the district court to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B)&(C) for a report and recommendation. The magistrate judge conducted an evidentiary hearing on February 3, 2004. The magistrate judge found that

> [t]he evidence adduced in this case unequivocally indicates that the plaintiff hired Attorney Flores as her agent in pursuing her claim against defendants and later in negotiating a settlement of her claims. Flores entered into an agreement with the defendants in which the material but simple terms of the agreement were set: all plaintiff's claims against all defendants arising from her son's death on December 26, 2001,were released and waived for the sum of $28,500.00. There is no evidence to the contrary on that score even though[] the plaintiff herself testified she thought the $28,500.00 was simply a first installment of a settlement for $100,000. This mistaken understanding of the settlement amount apparently came from her own attorney's settlement demand, which was rejected, of $100,000.00.

In footnote two, the magistrate judge specifically indicated that any objections had to be served and filed within ten days or the right to appeal the district court's order was waived.

None of the parties filed objections. On March 3, 2005, the district court accepted and adopted the magistrate's report, granted Defendants' motion, and entered judgment. Plaintiff filed a letter dated March 23, 2004, more than ten days after the order entered by the magistrate judge, which was treated as a motion for reconsideration. This letter states that on March 12, 2004, Plaintiff terminated Attorney Flores's employment. Plaintiff's motion also requested that the district court to set aside its order adopting the magistrate's report and recommendation. Plaintiff filed a pro se notice of appeal on April 2, 2004.

-4-

Flores was allowed to withdraw on April 8, 2004, by order of the magistrate judge. On May 14, 2004, the district court issued an order denying Plaintiff's motion for reconsideration. Because the order was not filed within ten days of the entry of the court's order of summary judgment, the court treated the motion as a Rule 60(b) motion for relief from judgment instead of a Rule 59(e) motion to alter or amend the judgment. The district court held that there were no circumstances justifying relief from judgment under Rule 60(b). The district court stated in relevant part:

> Plaintiff's circumstances, while undoubtedly frustrating and emotional, do not amount to the unusual or extreme situation (sic) contemplated by Rule 60(b)(6). Plaintiff's contentions and representations regarding Attorney Flores' actions and her own state of mind do not call into question either the R&R or the Court's previous Order enforcing the settlement agreement. The Court entered the Order enforcing the settlement agreement upon concurring with Magistrate Judge Carter's conclusion attorney Flores had apparent authority to settle Plaintiff's case on her behalf. Whether or not attorney Flores had *actual* authority to do so has no impact on liability as between Plaintiff and the various Defendants. At this point, Plaintiff's only recourse lies in a separate action against attorney Flores.

The district court therefore denied Plaintiff's motion for reconsideration.

Plaintiff is currently represented by counsel on appeal.

## II.

### A.

On appeal, Plaintiff contends that the district court erred in failing to apply Tennessee law to the issue of enforcement of the proposed Settlement Agreement. However, because Plaintiff failed to object timely to the magistrate judge's report and recommendation, despite notice from the magistrate, she waived the right to appeal from the district court's order affirming the magistrate judge's report. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *United States v.*

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140, 144, 155 (1985) (affirming constitutionality of Sixth Circuit rule).[1]

In short, Plaintiff's failure to timely object to any matters addressed in the magistrate judge's report and recommendation constitutes a waiver of these issues on appeal. More to the point, she has waived the three issues presented on appeal: (1) whether the district court erred in applying Tennessee law regarding enforcement of the proposed settlement agreement; (2) whether the district court erred in finding Plaintiff's former counsel had "apparent authority to settle lawsuits," and (3) whether the district court erred in finding the proposed settlement agreement had been met on all material terms.

Plaintiff's appeal is also defective because she failed to raise the issue of the proper law to be applied until this appeal. It is well-settled that this Court will not consider arguments raised for the first time on appeal. *See Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (issues presented

---

[1]Relying on *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983), Plaintiff contends that the waiver of her appeal was abrogated by the district court's review of her late filing. In *Patterson*, this Court concluded that "when written objections to a magistrate's report are tendered beyond the 10-day period of 28 U.S.C. § 636(b)(1), but are nevertheless filed and considered by the district court, the criteria identified in *Walters* in justification of the waiver rule promulgated therein dissipate and the rule will not apply to bar appellate review." *Id.* at 286. *Patterson* is distinguishable. There, the district court considered the untimely objections *on the merits*. *Id.* By contrast, in this case, the district court considered this matter under Rule 60(b) only, not on the merits.

Because the *Walters* rule is not jurisdictional, it may be excused in two situations. First, issues not directly raised in an objection may be considered on appeal if the district court addressed them. *Id.*; *Roach v. Chater,* No. 96-5780, 1997 WL 330649, at *2 (6th Cir. June 16, 1977) (order). As noted, the district court did not in this case address the merits. In addition, we may choose not to adhere to the *Walters* rule if exceptional circumstances indicate that it would be in the "interests of justice" to consider the merits. *Kent v. Johnson*, 821 F.2d 1220, 1222-23 (6th Cir. 1987). In this situation, the Supreme Court has suggested that this exception might be applicable where the district court has committed "plain error." *Thomas,* 474 U.S. at 155 & n.15. The record does not support application of the exception here, however.

for the first time on appeal are waived). Even if we consider the merits of Plaintiff's claims, she cannot prevail.

**B.**

Plaintiff contends that the magistrate judge erred in applying Michigan law instead of Tennessee law in determining whether the settlement agreement was enforceable. In support, she points out that the agreement was entered into in Tennessee. *See Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, (6th Cir. 1986); *Zink v. GE Capital Assur. Co.*, 73 Fed. Appx. 858, 861 (6th Cir. 2003) (holding that "[t]he settlement agreement was entered into in Kentucky . . . [a]s a result, Kentucky law governs whether the settlement agreement was enforceable").

As Plaintiff notes, the magistrate judge did not rely upon Tennessee law, but cited two Sixth Circuit opinions, *Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d at 530 and *Noga v. Parts Assoc.*, 2000 WL 178385 (6th Cir. Feb. 8, 2000), which applied Michigan law. She claims that this is problematic because Michigan law holds that when a client hires an attorney and holds him out as counsel representing him in a matter, "the client clothes the attorney with apparent authority to settle claims connected with the matter." *Capital Dredge*, 800 F.2d at 530. By contrast, Tennessee law holds that attorneys do not have apparent authority to settle matters, but rather the client must give express authority to settle a case.

Indeed, in Tennessee law "[t]he general rule . . . is that an attorney cannot surrender substantial rights of a client, including agreeing to dismissal of litigation which permanently bars a client from pursuing his claim, without the express authority of the client." *Absar v. Jones*, 833 S.W.2d 86, 89-90 (Tenn Ct. App. Jan. 27, 1992) (citations omitted); *see also Austin Powder Co. v. Thompson*, No. 03A01-9408-CH-00294, 1995 WL 33778 (Tenn. Ct. App. Jan. 27, 1995) (stating

-7-

that "[w]e adhere to the universal rule that a client's employment of an attorney does not clothe the attorney with authority to compromise and settle [the] client's cause of action, and such authority may not be implied"(internal quotations marks and citation omitted)); *Fort Sanders Reg'l Med. Ctr. v. Collins*, No. 03A01-9202-00041, 1992WL 184682 (Tenn. Ct. App. Aug. 5, 1992) (same). However, in this case, a review of her testimony before the magistrate judge reflects that Plaintiff accepted the offer of $28,500 and later reversed her acceptance.

Attorney Flores questioned Plaintiff about the settlement as follows:[2]

---

[2]Just prior to this testimony, Plaintiff testified to the following:

Q:    Okay.    Tonya, what was your understanding–What did you understand, from me, the terms of the settlement offer from Mr. Noblett, who is the counsel over here . . . what did you understand the offer was from him that I communicated to you back on December the 16th–the 17th?

. . .

A:    28,500.

Q:    28,500?

A:    Yes.  But I thought that was coming out of the hundred thousand.

Q:    Out of what hundred thousand?

A:    I thought I had a settlement of a hundred thousand.

Q:    What made you think that you had a settlement for a hundred thousand dollars?

A:    When we got the letter.

Q:    What letter was that?

A:    That was the letter that had the hundred thousand on it.  And I thought since I was losing my house, that they would just go ahead and take part of that and take it out of the hundred thousand.

Q:     How many times have we met as far as discussing the terms of an offer that we made and an acceptance of the offer; do you recall how many times?

A:     Maybe about–probably about 3 times, maybe.

Q:     About three times?

A:     Yeah.

Q:     Okay, was that–where was that?  Where were those meetings?

A:     Well, two was at the office.  And then you called me over the phone and told me about the settlement.

. . .

Q:     Okay, an acceptance of an offer, do you recall what we discussed about that?

A:     The only thing that I remember was to accept the $28,000 because I was losing my house.

Q:     Did you feel pressured to accept the $28,000?

A:     Yes, I did.  Yes.

. . .

Q:     You thought that–All right.  Let's go back to the house issue, to the house issue, Tonya.  Why were you getting ready to lose your house?  Let me back up a bit, do we agree that your house was in foreclosure?

A:     Yeah.

On cross-examination by John Rice, Plaintiff acknowledged that she has a college education. She further admitted that she received a copy of the December 18, 2003 letter, which clearly stated at the top in bold type "Acceptance of Offer to Settle."  Plaintiff also stated that she did not call to

tell her attorney that the letter was not correct. Plaintiff admitted that she also received the December 22 letter addressed to John Rice confirming the settlement. Finally, Plaintiff admitted to the following:

> Q: And when you got these letters, you understood the terms of the settlement, did you not?
>
> A: Yes, I did.
>
> Q: And you later on decided to reject the settlement?
>
> A: Yeah.

From Flores' January 1, 2004 letter, and Plaintiff's own testimony, it is clear from the record that Plaintiff initially gave Flores express authority to settle the matter, and then later reversed her position. By her acceptance of the offer she gave her attorney express authority to accept the offer on her behalf. Under Tennessee law, where a principal gives an agent express authority to settle a case, either orally or in writing, the principal is bound by the acts of the agent within the scope of authority expressly conferred upon the agent. *S. Ry. v. Pickle*, 197 S.W. 675 (Tenn. 1917). As the district court stated at the evidentiary hearing, "I think it's fair to say that if a party directs their lawyer to settle a case, and that is communicated, the fact that a person later on may change their mind about the settlement does not affect the fact that it is settled." In any event, by waiting two weeks before notifying her attorney of her intent to revoke her acceptance of the settlement agreement, Plaintiff ratified the settlement agreement through her silence. *See Austin Powder*, 1995 WL 33778 at * 3 (noting that silence can amount to ratification where the party with knowledge of the transaction fails for a reasonable time to protest or dissent). Thus, as the district court held, any dissatisfaction Plaintiff has regarding the settlement can only be directed towards her attorney.

**C.**

Plaintiff also asserts that the district court erred in finding that the proposed settlement agreement had been met on all material terms, because Plaintiff never understood the most important term, the amount of the settlement. However, as reflected above, Plaintiff testified that she understood the settlement agreement and later decided to reject it.

Plaintiff further alleges that she never understood that negotiations were taking place, and therefore there was never a meeting of the minds between herself and the defendants as to the settlement amount. Again, the foregoing testimony establishes that Plaintiff was aware of the fact that she was accepting an offer of $28,500, and that she was doing so because she was faced with the potential of losing her home. The record also clearly shows that Plaintiff received copies of all correspondence from her attorney relating to the acceptance of the written settlement offer made by the City of Chattanooga on December 17, 2003, and that she was capable of understanding them.

In sum, there was clearly a meeting of the minds as to the essential terms of the contract on December 18, 2003, such that a binding contract under Tennessee law was created. The district court did not err in enforcing it, and did not err in finding there was no adequate basis for relief under Rule 60(b).

**III.**

**AFFIRMED.**