**Raymond D. GAWLOSKI, Plaintiff,**

v.

**William H. DALLMAN,
et al., Defendants.**

**Nos. C–1–88–711, C–1–89–309.**

United States District Court,
S.D. Ohio, W.D.

March 16, 1992.

Robert Clark Neff, Jr., and Lynn D Pundzak, Helmer, Lugbill & Whitman Co., Cincinnati, Ohio, for plaintiff.

Steven Philip Fixler, Ohio Atty. General's Office, Cincinnati, Ohio, for defendants.

## ORDER

HERMAN J. WEBER, District Judge.

Plaintiff Raymond Gawloski, a former inmate at the Lebanon Correctional Institution (LCI) and a present inmate at the Grafton Correctional Institution, brings these consolidated actions under 42 U.S.C. § 1983 challenging the constitutionality of the conditions he endured while incarcerated in LCI's protective custody unit. Plaintiff alleges that the conditions violated his rights under the First, Eighth, and Fourteenth Amendments. He seeks compensatory and punitive damages as well as injunctive relief.

Plaintiff seeks permission to amend his complaint to add claims against two defendants in their individual capacities. Since leave to amend is freely given when justice requires, Fed.R.Civ.P. 15(a), plaintiff's motion for leave to amend (doc. no. 76) is GRANTED. *See Hafer v. Melo,* — U.S. —, —, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991). Plaintiff's second amended complaint, which he attached to his motion, is accepted as filed and has been fully taken into consideration by this Court.

Defendants are William H. Dallman, Warden of LCI; Reginald Wilkinson, Director of the Ohio Department of Rehabilitation and Correction; Ronald Hart, an inspector of institutional services at LCI; Stephen Bowman, a supervisor of the protective custody unit at LCI; and Dan Kammer, R. Pennington, and Bradley Couch, correctional officers assigned to the protective custody unit at LCI. Plaintiff's second amended complaint adds defendants Dallman and Wilkinson in their individual capacities.

This matter is before the Court upon defendants' motions to dismiss (doc. nos. 8, 47, 55), which the Court converted to motions for summary judgement (doc. no. 51); plaintiff's responses (doc. nos. 10, 59); and the parties' proposed findings of fact and conclusions of law (doc. nos. 57, 58, 78). On January 6, 1992, the Court held a hear-

ing on defendants' motion for summary judgement.

## FACTUAL BACKGROUND

During the time material to this action, plaintiff was incarcerated in the protective custody unit at LCI. LCI officials placed plaintiff in protective custody on November 18, 1987, where he remained for twenty-five months. LCI officials placed inmates in protective custody to safeguard them from physical harm by fellow inmates.

Plaintiff's cell in protective custody measured approximately six feet wide, ten feet long, and eight feet high. The cell contained a bed, a toilet, and a sink. For approximately twenty of the twenty-five months that plaintiff lived in protective custody, he was locked alone in his cell twenty-four hours a day, seven days a week except for two hours per week of recreation outside the cell and two to three showers per week. Plaintiff always had water and light in his cell when he wanted it and access to a window, which he could open or close. (Pl.'s dep., pp. 83–84).

Plaintiff alleges that during his stay in protective custody, one or more of the defendants violated his constitutional rights by denying him adequate heating in cold weather and adequate ventilation in warm weather, denying or severely limited his access to out-of-cell recreation, interfering with his personal and legal mail, denying him access to LCI's law library, denying him access to congregational religious services, denying him the opportunity to participate in educational or rehabilitative programs, denying his requests for a radio or television, denying him hot meals, and retaliating against him for filing institutional grievances.

Plaintiff alleges that defendants Bowman, Pennington, Kammer, and Couch enforced a no-talking rule during their shifts. Enforcement of this rule, according to plaintiff, "continued for weeks and months at a time." (Pl.'s dep., p. 90).

Plaintiff claims that defendants denied him the opportunity to purchase personal hygiene products at LCI's commissary; he admits, however, that prison officials provided him with personal hygiene items. (Pl.'s dep., pp. 124–25).

Defendants deny most of plaintiff's factual allegations and argue that the deprivations, if any, were reasonably related to legitimate penological interests. Placement of an inmate in protective custody, according to defendants, was generally discouraged because it interfered with rehabilitation. Defendants explain that the conditions in protective custody were more restrictive than conditions in the general inmate population in order to ensure the safety of the inmates living in protective custody.

## THE PARTIES' SPECIFIC CONTENTIONS

Plaintiff argues that taken individually or collectively his allegations regarding the conditions he endured in protective custody at LCI violated his rights under the Eighth Amendment. Plaintiff contends that defendants violated his constitutional rights by denying him meaningful access to the courts, by denying him the opportunity to exercise his religious beliefs, by housing him in protective custody for nearly twenty-five months, and by treating him differently than the inmates in LCI's general population. Plaintiff seeks injunctive relief because the injuries he suffered at LCI are capable of repetition yet evade review. This is so, according to plaintiff, even though he was transferred out of LCI in December 1989, since he is still incarcerated within the Ohio Correctional system, since he has been incarcerated for short periods of time at LCI since his transfer from LCI, and since he may in the future be transferred back to LCI or suffer constitutional violations in protective custody at other Ohio prisons.

Defendants contend that they are entitled to qualified immunity because at the time plaintiff lived in protective custody at LCI, clearly established constitutional law did not provide plaintiff with the rights defendants allegedly violated.

Plaintiff argues that defendants are not protected by qualified immunity because at

the time of his incarceration at LCI, federal courts had repeatedly recognized the constitutional rights he seeks to enforce.

## OPINION

The Court has reviewed the arguments made by the parties and has applied the principles of controlling law to the facts presented. The legal standard for consideration and disposition of issues on summary judgment is well settled and is set forth in *Goldstein v. D.D.B. Needham*, 740 F.Supp. 461, 463 (S.D.Ohio 1990).

## I. INJUNCTIVE RELIEF

 Plaintiff is not entitled to injunctive relief because his transfer out of LCI in December 1989, as well as his present status as an inmate at the Grafton Correctional Institution, moots his claim for equitable relief. *See Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (Per Curiam); *Young v. Lane*, 922 F.2d 370, 373 (7th Cir.1991); *Kimble v. Withrow*, No. 91–1813, unpublished slip op. (6th Cir., Nov. 1, 1991) [947 F.2d 945 (table) ].

 During oral argument defendants' counsel represented that LCI no longer has a protective custody unit and that LCI prisoners in need of physical protection are sent to the protective custody unit at the Warren Correctional Institution. As the Eleventh Amendment protects defendants from monetary liablity in their official capacities, *see Hafer*, —— U.S. at —— – ——, 112 S.Ct. at 363; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and as plaintiff's equitable claims are moot, defendants are dismissed in their official capacities. The remaining issues presented in this action are, therefore, related to past conditions at LCI and to whether defendants should be exposed in their individual capacities to monetary liability.

## II. QUALIFIED IMMUNITY

 Prison officials performing discretionary duties are entitled to qualified immunity if their actions do not violate clearly established constitutional law of which a reasonable prison official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Procunier v. Navarette*, 434 U.S. 555, 565–66, 98 S.Ct. 855, 861–62, 55 L.Ed.2d 24 (1978); *Marsh v. Arn*, 937 F.2d 1056, 1066 (6th Cir.1991); *Haynes v. Marshall*, 887 F.2d 700, 703 (6th Cir.1989). When an inmate seeks to impose monetary liability upon prison officials or corrections officers for an injury suffered during incarceration, the concerns underlying qualified immunity are particularly acute. These concerns include preventing "excessive disruption of government," and reducing the social costs of lawsuits such as "the expense of litigation, the diversion of official energy from pressing ... issues, and the deterrence of able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814, 817, 102 S.Ct. at 2736, 2737. "Finally, there is the danger that fear of being sued will 'dampen the ardor or all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Id.* at 814, 102 S.Ct. at 2736 (citation omitted).

To determine whether a constitutional right is clearly established, this Court must examine Supreme Court cases and cases within the Sixth Circuit Court of Appeals including decisions by local District Courts and the Ohio Supreme Court. *Ohio Civil Service Employees Ass'n. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir.1988). Decisions from outside the Sixth Circuit provide clearly established law only if they "point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Id.*

Once a defendant raises a qualified immunity argument in a motion for summary judgement, a plaintiff must satisfy a two prong test: "First, the allegations must state a claim of violation of clearly established law. Second, a plaintiff must present evidence sufficient to create a genuine issue as to whether a defendant in fact committed those acts." *Russo v. City of*

*Cincinnati,* 953 F.2d 1036, 1043 (6th Cir. 1992) (internal quotations and citations omitted); *see also Haynes,* 887 F.2d at 703; *Birrell v. Brown,* 867 F.2d 956, 958–59 (6th Cir.1989); *Poe v. Haydon,* 853 F.2d 418, 423–26 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

■ A constitutional right must be clearly established in a particularized sense. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

■ A specific act or circumstance may violate clearly established law even though no court has found it unconstitutional, as long as judicial precedent is "clear enough to put a reasonable official on notice that his actions are illegal or unconstitutional." *Birrell,* 867 F.2d at 958. The unlawfulness of an act "must be apparent in light of pre-existing law." *Marsh,* 937 F.2d at 1056 (citing *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096.

### III. THE EIGHTH AMENDMENT

Plaintiff bases his Eighth Amendment claim on four main allegations: the denial of out-of-cell exercise or recreation, the prohibition against talking, the denial of access to LCI's commissary, and the inadequate heating and ventilation of his cell.

In a generalized sense on or before November 18, 1987, prisoners possessed a right to be free from conditions of confinement that constituted an "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *see also Jones v. Metzger,* 456 F.2d 854, 855 (6th Cir.1972). In a particularized sense, plaintiff's individual claims—construed in his favor—fail to state a violation of clearly established Eighth Amendment law.

### A. Lack of Exercise or Recreation

■ Plaintiff argues that *Patterson v. Mintzes,* 717 F.2d 284, 287 (6th Cir.1983), constituted clearly established law that a "total or near-total deprivation of exercise or recreational opportunity, violates Eighth Amendment guarantees." (doc. no. 78, p. 47) (quoting *Patterson,* 717 F.2d at 289). Plaintiff also relies on this Court's opinion in *Gumpl v. Seiter,* 689 F.Supp. 754, 755–56 (S.D.Ohio 1987), to support his contention that the Eighth Amendment clearly required defendants to provide plaintiff with the opportunity for more exercise or recreation than he received.

Defendants are entitled to qualified immunity on plaintiff's denial-of-exercise claim because clearly established Eighth Amendment law at the time did not provide plaintiff with a right to more than two hours per week out-of-cell exercise or recreation. Plaintiff's reliance on *Patterson* is misplaced for the purposes of qualified immunity analysis because *Patterson's* general statement—"a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates the Eighth Amendment...." 717 F.2d at 289—did not establish in a particularized sense that the Eighth Amendment required a reasonable prison official to provide an inmate with the opportunity to exercise more than two hours per week. Neither the phrase "total deprivation" nor its close cousin "near-total deprivation" sufficiently particularized the contours of Eighth Amendment law so as to alert a reasonable prison official or corrections officer between 1987 and 1989 that two hours out-of-cell recreation per week constituted cruel and unusual punishment. *Cf. Marsh,* 937 F.2d at 1067–68 (searching in vain for clearly established pre-1986 law on when a failure to protect an inmate was unconstitutional).

The above reading of *Patterson* is consistent with *Walker v. Mintzes,* 771 F.2d 920 (6th Cir.1985), wherein the district court had not determined the minimum amount of outdoor recreation prisoners must be afforded. *Id.* at 927. Although the district court had determined that pris-

on officials should provide inmates with a certain amount of outdoor recreation, the Sixth Circuit remanded for a determination of the minimal recreation that was constitutionally necessary. *Id.* at 927–28. *Walker* therefore exemplifies the ongoing judicial search in 1985 for a precise statement of how much out-of-cell exercise and recreation was constitutionally required.

Plaintiff's reliance on this Court's opinion in *Gumpl* does not aid him in establishing that defendants violated clearly established Eighth Amendment law. This Court, in *Gumpl*, reiterated the general rule that inmates are "entitled to recreation." 689 F.Supp. at 755. This Court did not, however, specifically find in *Gumpl* that two hours per week out-of-cell recreation was unconstitutional. *Id.* at 755–56. *Gumpl*, therefore, did not establish—in a particularized sense—that the Eighth Amendment required a reasonable prison official to provide plaintiff with more than two hours per week out-of-cell recreation or exercise.

One case plaintiff relies on from the Seventh Circuit, *Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988), upheld a district court's injunction requiring prison officials to provide inmates in segregated confinement at least five hours per week out-of-cell recreation. This case does not defeat defendants' qualified immunity, even though it unmistakably points to the unconstitutionality of two hours per week recreation, *Ohio Civil Service Employees Ass'n.* 858 F.2d at 1177, because the district court's determination that five hours per week out-of-cell recreation was constitutionally mandated was not "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Id.* This conclusion is based on the lack of similarly specific decisions from other circuits,[1] as well as the lack of a judicial statement by the Sixth Circuit Court of Appeals regarding the specific number of hours per week out-of-cell recreation that was constitutionally mandated.[2]

The remaining cases plaintiff relies on are from other circuits.[3] None of the courts in these cases specifically held that two hours out-of-cell exercise or recreation violated the Eighth Amendment. These cases therefore "do not point unmistakably to the unconstitutionality of the conduct complained of ..." *Ohio Civil Service Employees Ass'n.*, 858 F.2d at 1177.

Although this Court recognizes that prison officials must provide inmates confined in protective custody with the opportunity to exercise or recreate outside their cells, *see, e.g., Gumpl*, 689 F.Supp. at 755, the undisputed facts in the instant case are insufficient to expose defendants to monetary liability. *Cf. Marsh*, 937 F.2d at 1070–71 (discussing the possible deleterious effects of imposing monetary liability on "the already beleaguered correctional systems of the states ...").

This Court therefore concludes that plaintiff's allegations regarding the denial of exercise or recreation fail to establish that defendants violated Eighth Amendment law, clearly established in a particularized sense between November 1987 and December 1989.

Accordingly, defendants are entitled to qualified immunity on plaintiff's denial of recreation or exercise claim.

---

**1.** *Cf. Ohio Civil Service Employees Ass'n.*, 858 F.2d at 1177 ("a mere handful of decisions of other circuit[s] ..., which are admittedly novel, cannot form the basis for a clearly established right.").

**2.** This analysis also applies to *French v. Owens*, 777 F.2d 1250 (7th Cir.1985), *cert. denied*, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986), another case plaintiff relies on from the Seventh Circuit.

**3.** *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982); *Montana v. Commissioners Court*, 659 F.2d 19, 22 (5th Cir.1981), *cert. denied*, 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 (1982); *Franklin v. State of Or., State Welfare Division*, 662 F.2d 1337, 1346 (9th Cir.1981); *Campbell v. Cauthron*, 623 F.2d 503, 506–07 (8th Cir.1980); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979); *Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir.1976).

## B. Plaintiff's Other Eighth Amendment Claims

■ Defendants are entitled to qualified immunity on the following claims: the alleged enforcement of a no-talking rule, the absence of heat during winter and ventilation in the summer, the denial of it's requests for a television or radio, the denial of the opportunity to purchase personal hygiene items from LCI's commissary, the lack of hot meals, and the denial of educational or other rehabilitative programs. Research of Supreme Court and Sixth Circuit precedent reveals no case that defined the contours of the Eighth Amendment to the particularized degree necessary to alert a reasonable prison official or corrections officer between November 1987 and December 1989 that the above alleged acts or conditions constituted a wanton and unnecessary infliction of pain in violation of the Eighth Amendment. Although by 1987 courts from other circuits had found numerous conditions violative of the Eighth Amendment,[4] these cases failed to place a reasonable prison official or corrections officer, in defendants' positions, on notice that the conditions plaintiff lived in at LCI violated the Eighth Amendment. *See Birrell*, 867 F.2d at 958.

■ Assuming arguendo that plaintiff states a violation of clearly established Eighth Amendment law by alleging a lack of heat or ventilation in his cell, this Court finds that plaintiff has failed to produce affirmative evidence in support of his claims that his cell lacked heat or ventilation for months at a time. *See Russo*, 953 F.2d at 1043; *see also Street v. J.C. Bradford Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). Although plaintiff testified during his deposition that the heat in his cell was turned off during the winter months, he also testified that he could not recall specifically when this occurred (pl.'s dep., pp. 85–86). Plaintiff, instead, referred counsel to copies of the institutional grievances and other documents he had filed as supporting materials in the instant case. *Id.* A thorough review of the material filed by plaintiff in the instant case reveals that on several occasions plaintiff alerted prison officials that he lacked heat in his cell. Plaintiff's supporting materials, however, do not corroborate his claim that he lacked heat in his cell for weeks or months at a time. *See, e.g.,* Case no. 89–309, doc. no. 16, attached exhibits. These materials also establish that prison officials seriously investigated and considered plaintiff's grievances. *Id.* Plaintiff, consequently, has failed to produce affirmative evidence indicating that defendants exposed him to extended periods of cold or heat in a manner violative of the Eighth Amendment. *Cf. Wilson v. Seiter*, 893 F.2d 861, 864–65 (6th Cir.1990), *vacated on other grounds*, — U.S. —, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (occasional exposure to temperatures as high as 95 degrees does not violate Eighth Amendment).

■ Turning briefly to the merits of plaintiff's claims, this Court finds that plaintiff's lack of a television or radio did not constitute cruel and unusual punishment, since it did not deprive plaintiff "of the minimal civilized measure of life's necessities." *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

■ Defendants' alleged failure to provide plaintiff with hot meals did not constitute cruel and unusual punishment absent some indication that plaintiff received less than one meal per day or that the meals

---

4. "Specific conditions found to violate the Eighth Amendment include the denial of adequate access to shower facilities, *Preston v. Thompson*, 589 F.2d 300 (7th Cir.1978); denial of medical treatment, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); overcrowding, *Cody v. Hillard*, 799 F.2d 447 (8th Cir.1986); threats to safety, *French v. Owens*, 777 F.2d 1250 (7th Cir.1985), *cert. denied*, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986); vermin infestation, *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir.1985); inadequate lighting, *id.*, inadequate ventilation, *id.*, unsanitary eating conditions, *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); and housing of inmates with known dangerous individuals, *Shrader v. White*, 761 F.2d 975 (4th Cir.1985)." *Wilson v. Seiter*, 893 F.2d 861, 864–65 (6th Cir. 1990), *vacated on other grounds*, — U.S. —, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

lacked nutritional value or were in some way physically harmful to plaintiff's health. *See Cunningham v. Jones*, 667 F.2d 565 (6th Cir.1982) (Per Curiam); *see also Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir.1974); *Eberenz v. McDaniel*, No. 79–3053, unpublished slip op. (6th Cir. March 20, 1980) [617 F.2d 602 (table) ]; *cf. Hudson v. McMillian*, —— U.S. ——, 112 S.Ct. 995, 1001, 117 L.Ed.2d 156 (1992) (distinguishing "unappetizing food" from "a punch in the face").

 The lack of educational or other rehabilitative programs did not subject plaintiff to cruel and unusual punishment. *See Owen v. French*, 777 F.2d 1250, 1256 (7th Cir.1985) (and cases cited therein).

Accordingly, defendants are protected by qualified immunity from plaintiff's Eighth Amendment claims. This Court further finds that plaintiff's claims regarding the lack of a television or radio, the lack of hot meals, and the lack of an opportunity to participate in educational or rehabilitative programs did not violate plaintiff's rights under the Eighth Amendment.

### C. Mutually Enforcing Conditions

 Plaintiff contends that defendants are not entitled to qualified immunity because in 1978, 1981, and 1991,[5] clearly established constitutional law provided that the cumulative effect of the conditions of confinement may cause a violation of the Eighth Amendment.

"*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blanket." *Wilson*, —— U.S. at ——, 111 S.Ct. at 2327.

Defendants are protected by qualified immunity because the standard of mutually enforcing conditions was not clearly estab-

lished in the Sixth Circuit, in a particularized sense, during plaintiff's incarceration at LCI. In 1985 the Sixth Circuit acknowledged, in general, that an Eighth Amendment claim could be based in extreme circumstances on the totality of prison conditions. *Walker*, 771 F.2d at 925. The standard, however, required some specific unconstitutional condition to exist before the totality of conditions violated the Eighth Amendment. *Id.* "A number of conditions, each of which satisfy Eighth Amendment requirements, cannot in combination amount to an Eighth Amendment violation." *Id.* at 926 (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246–47 (9th Cir.1982)). This was the state of the law in the Sixth Circuit throughout plaintiff's incarceration at LCI. *See Wilson*, 893 F.2d at 864. As a result, a reasonable prison official or corrections officer in defendants' position would not have known that a combination of conditions, each of which was lawful, could violate plaintiff's Eighth Amendment rights.

The Court notes that to hold otherwise would create an illogical and anomalous result—allowing plaintiff to proceed on his mutually-enforcing-conditions theory (because defendants lack qualified immunity) while prohibiting plaintiff from proceeding with his specific claims (because defendants possess qualified immunity).

Accordingly, defendants are entitled to qualified immunity on plaintiff's mutually-enforcing-conditions theory.

### IV. DENIAL OF ACCESS TO THE COURTS

 Plaintiff argues that defendants violated his right of meaningful access to the courts by denying him physical access to LCI's law library and by not providing him assistance from a person trained in the law.

Defendants are entitled to qualified immunity on plaintiff's claim that they denied him access to the courts. Contrary to plaintiff's contention, inmates do not necessarily possess a constitutional right of

---

5. Plaintiff relies on the following cases: *Wilson*, —— U.S. ——, 111 S.Ct. 2321; *Rhodes*, 452 U.S. 337, 101 S.Ct. 2392; *Hutto v. Finney*, 437 U.S.

678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). (doc. no. 78, p. 47).

physical access to a prison law library. *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985). In general, at time plaintiff was incarcerated in LCI, clearly established constitutional law required prison officials to provide inmates with "adequate, effective and meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). This broad standard left prison officials free to adopt "a large number of expedients" to ensure inmates access to the courts, and this standard did not provide inmates with a " 'particularized' expression of the constitutional rights involved." *Watson v. Norris,* 729 F.Supp. 581, 587 (M.D.Tenn.1989). Given the absence of a legal standard between 1987 and 1989 that defined—in a particularized manner—what a reasonable prison official or corrections officer must do to protect plaintiff's right of access to the courts, plaintiff's allegations fail to state a violation of clearly established law. *See id.*

■ Assuming that plaintiff states a claim of clearly established law, defendants are also protected by qualified immunity because the record indicates that prison officials assisted plaintiff in obtaining law books and legal information, and that they investigated his grievances regarding his lack of legal information in a manner that protected his right of access to the courts. *See, e.g.,* Case no. 89–309, doc. no. 46, (attached materials). Although plaintiff challenges that adequacy of defendants' efforts, plaintiff admits to receiving law books and information from LCI's law library. (Pl.'s dep., pp. 115, 163–184). Plaintiff has therefore failed to meet his burden on summary judgment of producing affirmative evidence indicating that defendants violated his right of access to the courts. *See Russo,* 953 F.2d at 1043; *Street,* 886 F.2d at 1479.

Accordingly, defendants are entitled to qualified immunity on plaintiff's claim that they denied him access to the courts.

## V. FREE EXERCISE OF RELIGION

■ Plaintiff argues that defendants violated his rights under the First Amendment by not allowing him to attend congregational religious services. Plaintiff claims that defendants allowed him to attend only one congregational religious service during his time in protective custody at LCI. Plaintiff admits that he was allowed to keep a Bible in his cell. (Pl.'s dep., p. 107). Plaintiff testified that two chaplains visited protective custody while he was there and that one chaplain counseled him, sometimes as often as once per week. *Id.* at 106. Plaintiff also received religious pamphlets and materials during his incarceration in protective custody.

Defendants are entitled to qualified immunity on plaintiff's claim that they violated his right to exercise to his religious beliefs. Generally, at the time plaintiff was incarcerated at LCI, prison officials could restrict an inmate's desire to practice a sincerely held religious belief upon showing that the restriction was reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349–53, 107 S.Ct. 2400, 2404–07, 96 L.Ed.2d 282 (1987). This general standard did not clearly establish, between 1987 and 1989, that the First Amendment required a reasonable prison official or corrections officer to provide plaintiff with the opportunity to attend congregational religious services, instead of or in addition to providing plaintiff with religious counseling, a Bible, and other religious reading materials. Furthermore, as early as 1975 at least one court had clearly determined that a prisoner in protective custody had no absolute right to attend congregational religious services. *Sweet v. South Carolina Dep't. of Corrections,* 529 F.2d 854 (4th Cir.1975).

■ Given plaintiff's admissions and descriptions of the religious services he received, he has also failed to meet his burden of producing affirmative evidence indicating that defendants violated his First Amendment rights by denying him the opportunity to attend congregational religious services. *See Russo,* 953 F.2d at 1043; *Street,* 886 F.2d at 1479.

Accordingly, defendants are protected by qualified immunity on plaintiff's claim that

they violated his First Amendment Right to exercise his religious beliefs.

## VI. DUE PROCESS

■ Plaintiff argues that defendants violated his rights under the substantive component of the Due Process Clause by maintaining the conditions that were tantamount to solitary confinement, and by not providing "the minimum procedural safeguards" necessary to impose such confinement (doc. no. 49, pp. 26–27).

Defendants are entitled to qualified immunity against this claim since the judicial authority plaintiff relies on [6] did not enunciate any clearly established right, in a particularized sense, that would have indicated to a reasonable prison official or corrections officer that the above conditions infringed plaintiff's rights under substantive component of the Due Process Clause.

■ Assuming arguendo that plaintiff's placement in protective custody constituted administrative segregation, rather than protective segregation, and assuming arguendo that plaintiff has alleged a violation of clearly constitutional law by claiming that the absence of minimum procedural safeguards violated his rights under the Due Process Clause, see Wolff v. McDonnell, 418 U.S. 539, 572 n. 19, 94 S.Ct. 2963, 2982 n. 19, 41 L.Ed.2d 935 (1974), plaintiff has failed to place in dispute the material facts regarding this claim. During oral argument, defendants' counsel represented that plaintiff received a hearing prior to entering protective custody, and that plaintiff received a review of the propriety of his placement in protective custody every thirty days. Since these undisputed facts establish that defendants did not violate plaintiff's rights under the Due Process Clause, see id.; see also Childs v. Pellegrin, 822 F.2d 1382, 1386–87 (6th Cir.1987),

defendants are entitled to qualified immunity.

Accordingly, defendants are protected by qualified immunity on plaintiff's claim that they violated his rights under the Due Process Clause.

## VII. EQUAL PROTECTION

■ Plaintiff argues that defendants violated his rights under the Equal Protection Clause by treating him different than the inmates in LCI's general population. In support of this contention, plaintiff points to the absence of an opportunity to purchase personal hygiene items at LCI's commissary, the denial of hot meals, the isolation from other inmates and from information or mental stimulation that he endured.

Defendants are protected by qualified immunity on this claim because the judicial authority he relies on [7] did not enunciate any clearly established right, in a particularized sense, that would have indicated to a reasonable prison official or corrections officer that the above conditions—or any of the conditions plaintiff experienced in protective custody—violated his rights under the Equal Protection Clause.

Accordingly, defendants are protected by qualified immunity on plaintiff's claim that they violated his rights under the Equal Protection Clause.

## VIII. INTERFERENCE WITH MAIL

■ Plaintiff contends that defendants violated his First Amendment rights by withholding his incoming or outgoing mail on five or six occasions. Plaintiff recalls one specific event: He received an envelope with external markings which stated that it contained seven pictures. When he opened the envelope, it did not contain any pictures. (Pl.'s dep., p. 202).

6. *Wolff v. McDonnell*, 418 U.S. 539, 557, 571 n. 19, 94 S.Ct. 2963, 2975, 2982 n. 19, 41 L.Ed.2d 935 (1974); *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir.1988); *Williams v. Lane*, 851 F.2d 867, 879 (7th Cir.1988).

7. *Procunier v. Martinez*, 416 U.S. 396, 413–14, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1974);

*McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973); *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (Per Curiam); *Lee v. Washington*, 390 U.S. 333, 334, 88 S.Ct. 994, 994, 19 L.Ed.2d 1212 (1968) (Per Curiam).

Assuming that plaintiff's allegations of interference with his mail are sufficient to establish a violation of clearly established First Amendment law, *see Procunier,* 416 U.S. 396, 94 S.Ct. 1800; *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), plaintiff has not met his burden of producing affirmative evidence, other than his uncorroborated deposition testimony, indicating that defendants interfered with either his incoming or outgoing mail. *See Russo,* 953 F.2d at 1043; *Street,* 886 F.2d at 1479. Moreover, the dozens of documents that plaintiff either received or filed in the instant consolidated cases provides ample evidence that defendants have not violated plaintiff's constitutional right to meaningful access to the courts by interfering with his mail. The record also indicates that plaintiff filed numerous institutional grievances concerning his mail problems and that prison officials investigated them and attempted to ensure that plaintiff received his mail. *See, e.g.,* case no. 89–309, doc. no. 16 (attached exs.).

Accordingly, defendants are protected by qualified immunity on plaintiff's claim that they violated his rights under the First Amendment by interfering with his mail.

## VIII. RETALIATION

Plaintiff alleges that defendants retaliated against him for filing lawsuits or institutional grievances by creating some of the conditions he endured at LCI. The specific conditions or acts he points to as retaliatory are the no-talking rule; the lack of heat or ventilation; the interference with his mail; the disruption and removal of his personal items, including legal papers, from his cell; and the occasional denial of matches. Plaintiff admits that he does not know why defendants searched his cell, and he alleges that they "enjoyed making his life miserable." (Pl.'s dep., p. 76). Plaintiff also testifies that when defendants removed some of his papers from his cell, they explained that the papers were a fire hazard. *Id.* at 193.

Assuming plaintiff's allegations regarding retaliation state a violation of clearly established law, *see, e.g., Cale v. Johnson,* 861 F.2d 943 (6th Cir.1988), defendants are entitled to qualified immunity because plaintiff has failed to meet his burden on summary judgment of producing some affirmative evidence in support of his conclusory allegations regarding retaliation. *See Russo,* 953 F.2d at 1043; *Street,* 886 F.2d at 1479. Consequently, plaintiff's deposition testimony regarding the alleged retaliation is speculative and insufficient to create a genuine issue of material fact in support of this claim. *Cf. Brown v. Dyke,* No. 91–1890, unpublished slip op. (6th Cir., Nov. 18, 1991) [948 F.2d 1288 (table) ].

Accordingly, defendants are protected by qualified immunity from plaintiff's claim that they retaliated against him for filing lawsuits and institutional grievances.

### ORDER

The Court hereby ORDERS that defendants' motions to dismiss (doc. nos. 8, 47, 55), which this Court has converted to motions for summary judgment, are GRANTED. Plaintiff's complaint is dismissed with prejudice.

This Court appreciates the efforts of plaintiff's counsel in accepting appointment, in filing several well-researched and well-written motions and memoranda, and in zealously representing plaintiff.

The case is terminated on the docket of this Court.

IT IS SO ORDERED.