Emmett Lewis **JONES,** Plaintiff,

v.

Wayne **STINE, et al., Defendants.**

No. 2:92–CV–73.

United States District Court, W.D. Michigan, S.D.

Feb. 10, 1994.

---

Emmett Lewis Jones, pro se.

Deborah K. Isom, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Corrections Div., Lansing, MI, for defendants.

## OPINION APPROVING REPORT AND RECOMMENDATION IN PART

McKEAGUE, District Judge.

This case presents a prisoner's civil rights action under 42 U.S.C. § 1983. Plaintiff is a state prisoner incarcerated at the Alger Maximum Correctional Facility in Munising, Michigan. Proceeding *pro se*, he complains of the conditions of his confinement in several particulars and names Wayne Stine, Warden, and Michael J. Crowley, Deputy Warden, as defendants. He seeks injunctive relief and damages. Defendants have moved the Court to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) and for summary judgment based on qualified immunity under Fed.R.Civ.P. 56(b).

The complaint and defendants' motion have been considered by United States Magistrate Judge Timothy P. Greeley pursuant to 28 U.S.C. § 636(b). He has issued a 32–page report and recommendation, recom-

mending the motion to dismiss be granted in part and denied in part and the motion for summary judgment be held in abeyance until limited discovery can be completed. Defendants object. The Court is obliged to review *de novo* those matters as to which objection is made. 28 U.S.C. § 636(b).

In the report and recommendation, Magistrate Judge Greeley summarized plaintiff's *pro se* allegations as stating essentially four cognizable claims: (1) that defendants have subjected him to cruel and unusual punishment in violation of the Eighth Amendment by denying him adequate cleaning supplies to maintain proper sanitation in his cell; (2) that defendants have subjected him to cruel and unusual punishment by denying him adequate opportunity for physical exercise and outdoor recreation; (3) that defendants have abridged his First Amendment freedom to exercise his religion by denying him opportunity to attend and participate in religious services; and (4) that defendants have, due to plaintiff's protective segregation classification, denied him equal protection of the laws.[1] Magistrate Judge Greeley further concluded that defendants' motion to dismiss should be granted only with respect to the equal protection claim. With respect to the other claims, he opined that plaintiff had stated valid claims upon which relief could be granted. He rejected defendants' qualified immunity defense as premature, recommending their motion for summary judgment on this ground be held in abeyance pending discovery.

## I

Plaintiff has not filed any objection to the report and recommendation, but defendants have. Defendants maintain the applicability of qualified immunity can be determined as a matter of law without the need for any discovery. They contend the facts pled in support of plaintiff's Eighth Amendment cruel and unusual punishment and First Amendment free exercise claims do not, as a matter of law, set forth violations of clearly established constitutional rights.

The report and recommendation contains a lengthy and thoughtful analysis of qualified immunity. The case law cited by the magistrate judge in defining the parameters of the defense are in large measure the same authorities defendants have cited in challenging the magistrate judge's conclusions. These authorities need not be reiterated at length, but a recapitulation of fundamental principles is appropriate.

The judicially created doctrine of qualified immunity strikes a balance between the need to vindicate those whose constitutional guarantees are infringed by public officials and the need to minimize the disruption of government caused by subjecting officials to the risk of trial. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 813–15, 102 S.Ct. 2727, 2735–36, 73 L.Ed.2d 396 (1982). It provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.,* 457 U.S. at 818, 102 S.Ct. at 2738. A claim against a public official avoids this immunity only if the right alleged to have been violated was "clearly established" in a particularized sense at the time of the complained of conduct. *Anderson, supra,* 483 U.S. at 640, 107 S.Ct. at 3039. That is, the contours of the right must be sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Id.* A necessary concomitant to the determination of whether the constitutional right was clearly established is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). These determinations present purely legal questions. *Id.; Mitchell v. Forsyth,* 472 U.S. 511, 526, n. 9, 105 S.Ct. 2806, 2815, n. 9, 86 L.Ed.2d 411 (1985); *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir. 1987).

---

1. The Court observes that the complaint, generously construed, could be understood as alleging additional claims. Plaintiff, however, has not objected to Magistrate Judge Greeley's characterization of his claims and the Court accepts it as a fair summary of plaintiff's primary grievances.

## II

Thus, with these fundamental standards in mind, the Court considers plaintiff's fact allegations to determine initially whether violations of constitutional rights have in fact been pled.[2] In evaluating the legal sufficiency of plaintiff's claims, the Court must accept all well-pled factual allegations as true and construe the complaint in the light most favorable to plaintiff. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.1990), *cert. denied* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). A claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Id.*

First, with respect to plaintiff's Eighth Amendment claim based on denial of adequate cleaning supplies, plaintiff has alleged:

12. Plaintiff is only given a mop once a week to clean cell floor, and at all other times he has to use a sponge to clean cell floor as well as toilet, sink, and eating surface with same sponge.

13. Plaintiff is never supplied with cleaning supplies such as soap, detergents, disinfectants to sanitize floor, sink, eating surface.

14. The named defendants only supply plaintiff with a duster to sweep floor twice a week to which plaintiff has to get on his hands and knees to sweep cell floor.

Second, in support of his Eighth Amendment denial of physical exercise claim, plaintiff alleges:

3. Plaintiff is being denied all recreational activities allowed to general population inmates to which plaintiff is entitled to same activities afforded to general population.

5. Plaintiff is locked in a outside module cage for one hour five days per week without any kind of exercise equipment whatsoever, to which he can only stand or walk in circles.

6. Plaintiff is being denied the privileges of playing basketball, cards, or any sports or recreational activities during his yard period time.

Third, in support of his First Amendment denial of free exercise of religion claim, plaintiff alleges:

2. This plaintiff is being denied his religious services due to being housed in administrative segregation unit.

Magistrate Judge Greeley determined that these allegations state three facially valid claims.

## III

Plaintiff's claim that he is denied adequate cleaning supplies asserts that he is provided only with a sponge, a mop once a week, and a "duster" twice a week. This is the only equipment he has for maintaining the cleanliness of his cell. He is never supplied with soap, detergents or disinfectants.

Even accepting these allegations as true and proven, the Court holds they do not rise to the level of a constitutional violation. Conditions of confinement are so deficient as to constitute cruel and unusual punishment only where an inmate is denied "the minimal civilized measure of life's necessities;" the Constitution "does not mandate comfortable prisons." *Wilson v. Seiter,* 501 U.S. 294, ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Yet, sanitation is a major concern in prisons today. Where reasonably sanitary conditions are not maintained, an Eighth Amendment violation may be sustained. *Walker v. Mintzes,* 771 F.2d 920, 928 (6th Cir.1985); *Grubbs v. Bradley,* 552 F.Supp. 1052, 1122–23 (M.D.Tenn.1982). The instant allegations do not suggest, however, even when viewed in the light most favorable to plaintiff, and even considering "the evolving standards of decency that mark the progress of a maturing society," *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), that plaintiff has been

---

2. The magistrate judge having recommended dismissal of plaintiff's equal protection claim, and plaintiff not having objected, and the recommendation appearing to be proper, the Court will adopt the recommendation and gives the claim no further consideration herein.

deprived of the minimal civilized measure of life's necessities.

Plaintiff's allegations indicate his cell is equipped with a toilet and sink. He has not alleged they are in disrepair or not functioning. Presumably, then, his cell is supplied with running water. Given running water, a sponge and weekly access to a mop and duster, it is clear, by plaintiff's own allegations, that defendants have provided him with the wherewithal to maintain his cell in reasonably sanitary condition, notwithstanding the lack of cleanser and disinfectant.

Plaintiff has not alleged that he has suffered ill-health or other physical harm as the result of unsanitary conditions. *Cf., Ramos v. Lamm,* 639 F.2d 559, 568 (10th Cir.1980), *cert. denied* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) (sanitation must be such as does not threaten or cause degeneration of inmate's mental and physical well-being); *Brock v. Warren County, Tenn.,* 713 F.Supp. 238, 242 (E.D.Tenn.1989) (uncomfortable conditions do not offend constitution unless they threaten inmate's health); *Grubbs v. Bradley, supra,* 552 F.Supp. at 1123 (conditions must be sanitary enough so that inmates are not exposed to unreasonable risk of disease). Nor are plaintiff's allegations even remotely analogous to facts that have been found to amount to cruel and unusual punishment. See *Ramos, supra* (leaking roofs; inadequate ventilation, resulting in excessive mold and fungus growth; defective plumbing causing sewage to accumulate in cells; rodent and insect infestation; standing water and exposed electrical wires in shower areas).

It may be difficult for plaintiff to maintain his accustomed standards of cleanliness and this may lead to discomfort, but the Constitution does not mandate comfortable prisons. "To the extent conditions [of confinement] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes, supra,* 452 U.S. at 347, 101 S.Ct. at 2399. The alleged denial of cleanser and disinfectant does not, by any stretch of the imagination, suggest "the serious deprivation of basic human needs," or "the wanton and unnecessary infliction of pain," that constitutes cruel and unusual punishment. See *id.* Accordingly, the Court concludes, contrary to Magistrate Judge Greeley's recommendation, that plaintiff's Eighth Amendment claim based on inadequate sanitation must be dismissed for failure to state a claim upon which relief can be granted.

## IV

Plaintiff's claim that he has been denied adequate opportunity for exercise is founded on the charge that his outdoor recreation is limited to one hour per day, five days per week in a "module cage," alone, without any exercise equipment. This "condition of oppression" plaintiff alleges, has caused severe mental deterioration and anguish. Defendants do not dispute these allegations. They explain that the module cage is a fenced-in area, 12 × 15 feet in surface dimension and 12 feet high, in which prisoners classified to protective segregation are allowed outdoor exercise for their own safety. Stine Aff., p. 3; Crowley Aff., p. 3. Plaintiff is classified to protective segregation at his own request. Stine Aff., p. 1; Crowley Aff., pp. 1–2. Plaintiff has not refuted either of these statements. Thus, the threshold question is whether the restriction of an inmate voluntarily classified to protective segregation to five hours of outdoor recreation per week in a fenced-in module constitutes cruel and unusual punishment.[3]

---

3. The court is essentially scrutinizing the legal sufficiency of the claim. However, because some of the facts which frame the question are gleaned not from the complaint, but from defendants' affidavits, defendants' motion, brought as both a motion to dismiss under Fed.R.Civ.P. 12(b)(6) and a motion for summary judgment under Fed. R.Civ.P. 56(b), is properly considered as a motion for summary judgment in this respect. Fed. R.Civ.P. 12(b)(6); *Local 267 v. Ohio Carpenters Health & Welfare Fund,* 926 F.2d 550, 558 (6th Cir.1991). Plaintiff has had notice that the mo-

tion would be considered under Rule 12 and/or Rule 56.

Magistrate Judge Greeley's concern that plaintiff is unfairly handicapped in his defense of the summary judgment motion because he has not been permitted to conduct discovery is inapposite in this context. The only facts not alleged in the complaint which the Court is considering—the dimensions of the exercise module and plaintiff's request for protective segregation—are facts within plaintiff's personal knowledge, which he

■ Physical exercise is a necessity of civilized life. Unnecessary or extreme restriction of inmates' opportunity for fresh air, exercise and recreation may rise to the level of an Eighth Amendment violation. *Walker v. Mintzes, supra,* 771 F.2d at 927; *Patterson v. Mintzes,* 717 F.2d 284, 289 (6th Cir. 1983); *Pressley v. Brown,* 754 F.Supp. 112, 116 (W.D.Mich.1990). Magistrate Judge Greeley concluded the instant allegations of inadequate opportunity for exercise state a valid claim which can not be dismissed absent opportunity for further factual development. Indeed, this Court has ruled the constitutionality of prison exercise restrictions is generally best determined following presentation of evidence. *Pressley, supra,* 754 F.Supp. at 116. Factors to consider include "physical or psychological injuries resulting from a lack of exercise or a particularized need for exercise, length of confinement without exercise, time per day outside the cell, and opportunity for contact with other inmates." *Id.*

■ Viewing plaintiff's allegations, in conjunction with the facts added by defendants, in the light most favorable to plaintiff, and considering them under evolving standards of decency, the Court concludes that a valid claim has barely been stated and that genuine issues of material fact remain. Considering the factors summarized in *Pressley,* above, it is *conceivable* that evidence of such matters as (1) plaintiff's mental deterioration and anguish, (3) the duration of plaintiff's confinement in protective segregation, and (3) availability of safe recreational alternatives for protective segregation inmates, could be developed that might reasonably warrant judgment for plaintiff on this claim. That is, the Court finds the facts presented facially satisfy the "objective component" of an Eighth Amendment claim inasmuch as the trier of fact *could* find that plaintiff has been subjected to deprivation of a basic life necessity sufficiently grave to constitute cruel and unusual punishment. See *Wilson v. Seiter, supra,* 501 U.S. at ——, 111 S.Ct. at 2324. The Court also finds that the "subjective component," relating to defendants' state of mind, is facially satisfied, inasmuch as defen-

dants do not disavow knowledge that plaintiff was subjected to the alleged conditions.

■ Nonetheless, the Court is convinced that even if plaintiff were able to establish entitlement to some relief on this claim, it cannot come in the form of damages assessed to these defendants. They are shielded by qualified immunity. This is so because it is clear, given the skeleton of facts presented to the Court, that any constitutional right to greater physical exercise than has been afforded to plaintiff, that may ultimately be recognized by the trier of fact, was not clearly established at the time of defendants' alleged actions. A public official can be held liable in civil damages for violating another's right only if the contours of the right are so clearly established in a particularized sense that he should reasonably have understood that he was violating that right.

Whether a right is clearly established is a function of the following inquiry:

> In deciding whether the law was clearly established, we look to federal constitutional, statutory or case law existing at the time.... When the focus is on decisional law, we examine initially, and most importantly, the decisions of the Supreme Court and the courts of this circuit.... If case law from these sources is unavailable, we may also look for guidance to the cases from other circuits.... We recognize, however, that a single recent case from the court of appeals of another circuit is hardly sufficient to make the law "clearly established" in this circuit.

*Eugene D., By and Through Olivia D. v. Karman,* 889 F.2d 701, 706 (6th Cir.1989), *cert. denied,* 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990) (citations, footnote omitted). See also *Long v. Norris,* 929 F.2d 1111, 1115 (6th Cir.1991).

■ In determining that plaintiff's claim is based on a clearly established right, Magistrate Judge Greeley viewed the right in a generalized sense, finding it sufficient that plaintiff has alleged a denial of adequate exercise. Yet, the asserted right must be scrutinized in a particularized sense. *Anderson v. Creighton, supra,* 483 U.S. at

could refute without the aid of discovery, if inac-

curate, but he has not done so.

640, 107 S.Ct. at 3039. While official action is not necessarily protected by qualified immunity unless and until the very action in question has been held unlawful, the unlawfulness must be apparent in light of pre-existing law. *Marsh v. Arn,* 937 F.2d 1056, 1067 (6th Cir.1991).

Plaintiff has presented no decisional law, from the Supreme Court, the Sixth Circuit Court of Appeals, or otherwise, that particularly declares or directly supports a determination that limiting the outdoor recreation of an inmate voluntarily classified to protective segregation to one hour per day, five days per week, in an exercise module constitutes cruel and unusual punishment. In fact, the most pertinent case law suggests a contrary result.

The Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is necessary for inmates' well-being. *Walker v. Mintzes, supra,* 771 F.2d 920, 927–28. The *Walker* court expressly refrained from prescribing any minimum standard, below which a per se violation of the Eighth Amendment would be made out. The court observed that deprivation of nearly all fresh air and light might be an Eighth Amendment violation. See also *Patterson v. Mintzes, supra,* 717 F.2d at 287 (total or near-total deprivation of exercise or recreational opportunity violates Eighth Amendment). Further, the court noted, without adopting, the standard employed by the Ninth Circuit in *Spain v. Procunier,* 600 F.2d 189 (9th Cir.1979), requiring that certain closely confined inmates must receive one hour of outdoor exercise per day, five times a week. Thus, even if *Walker* were generously construed as approving the *Spain* five-hours-per-week standard, the present facts would be in conformity therewith.

In *Gawloski v. Dallman,* 803 F.Supp. 103, 109–10 (S.D.Ohio 1992), the court reviewed the claim of an inmate in protective custody that his Eighth Amendment rights were vio-

lated in that he was allowed only two hours per week of out-of-cell recreation. Applying *Walker,* the *Gawloski* court held that during the period 1987–1989, no constitutional right to more than two hours of out-of-cell recreation per week had been clearly established. The court characterized *Walker* as exemplifying "the on-going judicial search in 1985 for a precise statement of how much out-of-cell exercise and recreation was constitutionally required." *Id.,* at 110. Because the asserted right was found not to have been clearly established, the *Gawloski* court held the defendants were protected by qualified immunity.

The court reached this result notwithstanding its acknowledgement of *Davenport v. DeRobertis,* 844 F.2d 1310 (7th Cir.1988), *cert. denied* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988), where an injunction requiring prison officials to provide inmates in segregated confinement at least five hours per week out-of-cell recreation was upheld. The *Gawloski* court was also cognizant of the *Spain* standard, but held these decisions from other circuits were not sufficient to form the basis for a clearly established right in the Sixth Circuit.

This Court agrees that a definite standard still has not been clearly established in the Sixth Circuit such that defendants should have known that they were violating the law. In fact, if the Court were to accept the standard applied in cases like *Davenport* and *Spain* as having been clearly established, it would serve only to legitimize defendants' conduct as being within constitutional parameters.[4]

Accordingly, the Court concludes as a matter of law that defendants Stine and Crowley are protected by qualified immunity because governing judicial precedent is not clear enough to have put reasonable officials in defendants' positions on notice that their con-

---

4. The Court recognizes that neither *Spain* nor *Davenport* explicitly involved use of an exercise module. This distinction is nondispositive because (1) it is clear that the exercise module permits enjoyment of light and fresh air and permits limited exercise in the form of jogging and calisthenics, the very liberties those decisions serve to secure; and (2) in any event, there is *no* authority for the proposition that limitation of outdoor exercise to five hours per week in an exercise module violates a clearly established right.

duct was unconstitutional.[5] Plaintiff's claim for monetary damages must therefore be dismissed. To the extent plaintiff seeks injunctive relief, however, this claim survives.

## V

The same general analysis applies also to plaintiff's First Amendment claim that he has been wrongfully denied the opportunity to participate in congregate religious services. Plaintiff alleges this restriction is imposed because he is in protective segregation. Defendants confirm this allegation, stating it is not feasible to safely afford group religious services to prisoners in protective segregation. Stine Aff., pp. 2, 3; Crowley Aff., pp. 2, 4. They state also that protective segregation prisoners are permitted to meet with the chaplain individually. Stine Aff., p. 2; Crowley Aff., p. 2. Plaintiff has not disputed that he requested to be placed in protective segregation or that he is allowed to meet individually with the chaplain.[6]

Defendants do not quarrel with Magistrate Judge Greeley's conclusion that these facts make out a facially valid claim for unreasonable restriction of plaintiff's freedom to exercise his religion. They maintain, however, that any right of protective custody inmates to participate in congregate religious services that *may* be recognized has not been clearly established. The Court agrees.

Prison inmates do not lose their right to exercise their religion by virtue of their incarceration, but the circumstances of prison life may require some restriction of this right. *Whitney v. Brown*, 882 F.2d 1068, 1072 (6th Cir.1989). A prison regulation that impinges on a prisoner's right to exercise his religion is valid as long as it is reasonably related to legitimate penological interests.

*Phelps v. Dunn*, 965 F.2d 93, 98 (6th Cir. 1992), citing *O'Lone v. Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). "This 'reasonably related' standard ensures the ability of corrections officials to anticipate security problems and adopt innovative solutions to the intractable problems of prison administration, and it avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to resolution by decree." *O'Lone*, 482 U.S. at 349, 107 S.Ct. at 2405. Further, prison officials are not required to disprove the availability of alternatives in order to demonstrate the reasonableness of the restriction. *Id.*, at 350, 107 S.Ct. at 2405.

Plaintiff is undisputedly excluded from congregate services for his own safety because he has requested placement in protective segregation. The purpose of the restriction thus appears to be reasonably related to a legitimate penological objective. This is the only restriction complained of and plaintiff is otherwise, apparently, as free as inmates in the general population to exercise his religion.

The freedom to participate in group religious services is admittedly important; and the Court is willing to assume for present purposes that plaintiff could conceivably develop facts under which he could, notwithstanding defendant's apparently legitimate justification, demonstrate a First Amendment violation. However, again, there is no indication in the case law that the right of voluntarily segregated prisoners to participate in group religious services has been clearly established. Plaintiff has cited no case law to this effect. Neither did Magistrate Judge Greeley cite any decisions recognizing such a right specifically. He appears to have recommended denial of the qualified

---

**5.** The above analysis focuses on the "objective component" of plaintiff's Eighth Amendment claim. That is, the Court has concluded that plaintiff has failed to show that he has been subjected to what may be characterized under "clearly established" law as the deprivation of a basic life necessity sufficiently grave to constitute cruel and unusual punishment. This conclusion renders immaterial Magistrate Judge Greeley's concern about the import of the subjective component for qualified immunity analysis. See report and recommendation, pp. 12–20.

**6.** Again, the Court may legitimately consider these limited statements from defendants' affidavits, in determining whether the particular right asserted by plaintiff has been clearly established, even though plaintiff has had no opportunity to conduct discovery, because the statements relate to matters within his personal knowledge and could be refuted by him, if inaccurate, without the aid of discovery. See note 3, *supra*.

immunity defense at this stage based, again, on consideration of the asserted right in a generalized, rather than a particularized, sense.

Viewing the asserted right in a particularized sense, the Court concludes that pre-existing case law is not such as would put reasonable corrections officials on notice that denial of congregate religious services to one in protective custody would violate his rights. In *Gawloski, supra,* 803 F.Supp. at 113, the court affirmatively held that no such right had been established between 1987 and 1989. In fact, the court observed, "at least one court had clearly determined that a prisoner in protective custody had no absolute right to attend congregational religious services." *Id.,* citing *Sweet v. South Carolina Dep't of Corrections,* 529 F.2d 854 (4th Cir.1975). See also *Nolley v. County of Erie,* 776 F.Supp. 715, 741 (W.D.N.Y.1991); *Benford v. Wright,* 782 F.Supp. 1263 (N.D.Ill.1991).

Accordingly, defendants are entitled to qualified immunity as a matter of law. Plaintiff's First Amendment claim for injunctive relief, however, may go forward.

### VI

In conclusion, the Court approves the report and recommendation in part and rejects it in part. To the extent it recommends dismissal of plaintiff's equal protection claim, it is approved. To the extent it recommends denial of defendants' motion to dismiss plaintiff's first Eighth Amendment claim (unsanitary conditions), it is rejected. To the extent it recommends denial of defendants' motion for summary judgment based on qualified immunity with respect to plaintiff's second Eighth Amendment claim (inadequacy of outdoor recreation), and plaintiff's First Amendment claim, it is rejected.

Accordingly, defendants' motion to dismiss will be granted with respect to plaintiff's equal protection and Eighth Amendment (unsanitary conditions) claims and denied with respect to the other claims. Further, defendants' motion for summary judgment based on qualified immunity will be granted with respect to plaintiff's Eighth Amendment (outdoor recreation) and First Amendment claims. Surviving for further proceedings are only plaintiff's claims for injunctive relief with respect to the Eighth Amendment (outdoor recreation) and First Amendment claims. An order consistent with this opinion shall issue forthwith.